## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DION HORTON, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 22-cv-1391 |
| JILL RANGOS, *et al.*, | |
| Defendants. | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## HEARING OFFICER DEFENDANTS' MOTION TO DISMISS
## WITH INCORPORATED MEMORANDUM OF LAW

(Oral Argument Requested)

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................ **2**

DISCUSSION ................................................................................................................. **2**

I.     Hearing Officer Defendants Personally Participate in the Unconstitutional Conduct
Alleged in the Complaint. ........................................................................................ 2

II.    A Preliminary Hearing Does Not Foreclose Plaintiffs' Claims Regarding the Inadequacy
of Their *Gagnon* I Proceedings. ................................................................................. 5

III.   Hearing Officer Defendants Are Not Immune From Declaratory Relief. .......................... 6

   A.   *Qualified Immunity Does Not Apply Where Plaintiffs Seek Only Declaratory Relief.* .... 6

   B.   *Absolute Judicial Immunity and Quasi-Judicial Immunity Do Not Apply Where
   Plaintiffs Seek Only Declaratory Relief.* ................................................................... 7

IV.    *Heck v. Humphrey* Does Not Apply. ......................................................................... 7

   A.   *The* Heck *Line of Cases Only Applies to § 1983 Actions That Would Necessarily
   Demonstrate the Invalidity of the Duration or Fact of Plaintiffs' Confinement.* ................... 8

   B.   *Victory for Plaintiffs Would Not Necessarily Result in Release From Jail.* ................... 9

   C.   *The Unpublished Third Circuit Case Defendants Cite Is Inapposite.* ........................... 11

      1.   Incarceration Pursuant to a Probation Detainer Is Not a Lawfully Imposed Sentence
      of Incarceration for *Heck* Purposes. ..................................................................... 11

      2.   Unlike *McBride*, This Case Does Not Go to the Core of Habeas. ........................... 12

V.    The *Rooker-Feldman* Doctrine Does Not Apply to Plaintiffs' Claims. ............................. 13

CONCLUSION .............................................................................................................. **15**

**INTRODUCTION**

This class action lawsuit challenges the probation detainer system in Allegheny County through which Defendants jail hundreds of individuals every year for months on end without lawful justification. Hearing Officer Defendants are managing probation officers at Adult Probation who oversee *Gagnon* I proceedings and make decisions or recommendations regarding whether to lift probation detainers. They routinely and systematically conduct the *Gagnon* I proceedings in a perfunctory manner: the proceedings typically last no more than a few minutes, detainees are unable to present evidence or confront the evidence against them, and Hearing Officers render a decision on the detainer without making any finding that detention is necessary. Pursuant to County Defendants' detainer policy and Judicial Defendants' no-lift policy, Hearing Officers also order mandatory detention in certain categories of cases, requiring lengthy detention without any regard to the individualized circumstances of the case.

In their individual capacity motion to dismiss (Docs. 62 and 63), Hearing Officer Defendants raise various jurisdictional and immunity defenses, none of which apply to the facts of this case. Hearing Officers personally participate in the constitutional violations alleged in the complaint, no immunity shields them from the declaratory relief sought in this case, and neither *Heck v. Humphrey* nor *Rooker-Feldman* apply here. Accordingly, Defendants' motion should be denied.

**DISCUSSION**

I. **Hearing Officer Defendants Personally Participate in the Unconstitutional Conduct Alleged in the Complaint.**

Hearing Officer Defendants contend that Plaintiffs' Complaint fails to allege that they were personally involved in the constitutional violations. Doc. 63 at 4-5. To the contrary, the Complaint details the precise role Hearing Officers play in violating Plaintiffs' rights when presiding over

2

*Gagnon* I proceedings. Plaintiffs have therefore stated a claim against the Hearing Officers in their individual capacities.

To state a claim under 42 U.S.C. § 1983 against an actor in her individual capacity, a plaintiff must establish that the "conduct complained of was committed by a person acting under color of state law" and the conduct "deprived the complainant of rights secured under the Constitution or federal law." *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998). For liability to attach under § 1983, a plaintiff must sufficiently allege that each defendant was personally involved in the acts that violated her federally protected rights. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

Plaintiffs have adequately alleged that Hearing Officer Defendants personally participated in constitutional violations against them and members of the putative class. Plaintiffs' claims against the Hearing Officers do not rely on supervisory liability; rather, Plaintiffs allege that Hearing Officers *personally* violated their rights by conducting inadequate hearings and ordering their detention absent the required procedures and findings. Plaintiffs also do not make any *Monell* claim based on Hearing Officer Defendants' conduct and do not allege that the Hearing Officers are final policymakers for the county. *See generally Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

Plaintiffs' allegations regarding Hearing Officers' unconstitutional conduct are specific: Plaintiffs describe in detail the perfunctory *Gagnon* I proceedings over which Hearing Officers preside. *See* Doc. 1 ¶¶ 68-83. Plaintiffs allege that these proceedings typically last no more than a

few minutes, *see id.* ¶ 69; that probationers are unable to present evidence or challenge evidence against them, *id.* ¶ 74; and that Hearing Officers render a decision without making any finding that detention is necessary, *id.* ¶ 75. Plaintiffs allege that Hearing Officers decline to release individuals in the vast majority of cases and include statistics on these release rates. *Id.* ¶¶ 76-79. Plaintiffs allege that Hearing Officers' recommendations are routinely rubber-stamped by the reviewing judicial officer ex parte. *Id.* ¶ 81. Hearing Officers thereby carry out various actions that directly result in Plaintiffs being detained without the required procedures or findings.

Plaintiffs allege additional specific actions by Hearing Officers related to the mandatory detention and no-lift policies. Plaintiffs allege that Hearing Officers systematically order mandatory detention pursuant to County Defendants' detainer policy and Judicial Defendants' no-lift policy. *Id.* ¶¶ 84-99. In doing so, Hearing Officers do not consider any evidence about the circumstances surrounding the alleged violation, nor do they make a finding that detention is necessary. *Id.* ¶ 85. Hearing Officers implement these unconstitutional policies, resulting in Plaintiffs' unconstitutional detention.

It is simply untrue, despite Hearing Officers' claim, that Plaintiffs refer to the individual Hearing Officer Defendants "only" when naming them and setting forth statistics related to the detention rate. Doc. 63 at 4-5. The Complaint includes several pages of allegations describing how Hearing Officers fail to conduct adequate hearings and to make necessary findings before recommending detention—a decision that is routinely rubber-stamped by the reviewing judicial officer ex parte, *see* Doc. 1 ¶¶ 68-83, and how Hearing Officers apply the mandatory detention and no-lift policies to detain people with no individualized consideration of their cases, *see id.* ¶¶ 84-99. Plaintiffs describe systemic practices that all Hearing Officer Defendants partake in. These

allegations are more than sufficient to state a claim against Hearing Officer Defendants in their individual capacities.

> **II.    A Preliminary Hearing Does Not Foreclose Plaintiffs' Claims Regarding the Inadequacy of Their *Gagnon* I Proceedings.**

Hearing Officer Defendants, citing *Commonwealth v. Jordan*, 634 A.2d 637 (Pa. Super. 1993), and *Commonwealth ex rel. Rambeau v. Rundle*, 314 A.2d 842, 848 n.3 (Pa. 1973), contend that because a preliminary hearing (or trial) on a new crime allegation could potentially serve the same purpose as a *Gagnon* I proceeding that Plaintiffs have failed to state a claim against the Hearing Officer Defendants. This is incorrect.

Both *Rambeau* and *Jordan* are Pennsylvania state court cases that do not bind this Court, nor should the Court find them persuasive. *Rambeau* predates the Supreme Court's guidance in *Gagnon* by two months, rendering it wholly inapplicable in a post-*Gagnon* era: It cannot possibly be read as satisfying *Gagnon*'s requirements. *See Rambeau,* 314 A.2d at 850 n.6 (Pomeroy, J., concurring). As for *Jordan*, it addressed a situation where there was no *Gagnon* I proceeding at all, with the preliminary hearing wholly substituting for the *Gagnon* I. *Jordan*, 634 A.2d at 348-49. Conversely, here, the Court of Common Pleas has abdicated its responsibility to the Hearing Officer Defendants. It is Defendants themselves who refer to these hearings as a "*Gagnon* 1 hearing." *See* Doc. 3-1 at 4-6.  In so doing, Defendants have made clear their decision to supplant any preliminary hearing with the *Gagnon* I hearing, and therefore they must provide the panoply of required protections. What's more, the plaintiff in *Jordan* did not challenge, and the court did not consider, the particulars of how the preliminary hearing was conducted and whether it actually comported with due process. The nature of the challenge is therefore distinguishable from the one Plaintiffs bring here, and it cannot be read as disposing of their claims.

Indeed, if Hearing Officer Defendants have assumed the role of conducting *Gagnon* I proceedings for *all* individuals accused of violating probation (including those accused of committing new crimes), they cannot simply claim that they are not bound by the Constitution because Plaintiffs received a preliminary hearing—weeks after Plaintiffs were trapped in jail on the probation detainer—that did not even address Plaintiffs' probation detainers. Rather, if the Court of Common Pleas has decided to abdicate the role of independent decision-maker to Hearing Officer Defendants, these Defendants have a constitutional responsibility to ensure that the *Gagnon* I proceedings are exactly that: a constitutionally sufficient process that comports with the requirements of *Gagnon*. This includes providing the opportunity to present and challenge evidence, and making a determination that a person's detention is necessary.

### III.    Hearing Officer Defendants Are Not Immune From Declaratory Relief.

In compliance with § 1983's limits on relief against judicial officials acting in a judicial capacity, Plaintiffs have sought only a declaratory judgment, and not injunctive relief or damages, against Hearing Officer Defendants. *Compare* Doc. 1 ¶¶ 158, 165, 172, & 179 *with* ¶¶ 159-60, 166-67, 173-74, 180-81. "[Eleventh Amendment] immunity does not extend to individual state officers sued in their individual capacities for prospective injunctive or declaratory relief to remedy ongoing violations of federal law." *Capogrosso v. The Supreme Ct. of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009).

### A.    Qualified Immunity Does Not Apply Where Plaintiffs Seek Only Declaratory Relief.

"[T]he defense of qualified immunity is available only for damages claims—not for claims requesting prospective injunctive relief." *Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006); *see also Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984) (judicial immunity not a bar to prospective injunctive relief). Plaintiffs do not seek damages against Hearing Officer Defendants.

*See* Doc. 1 ¶ 55 ("Hearing Officers are sued in their individual and official capacities for declaratory relief."); *id.* ¶ 182 (Plaintiffs' request for relief seeking compensatory damages exclusively against County Defendants—Judge Rangos, Adult Probation, and Warden Harper—and not against any other Defendants, including Hearing Officers). Because Plaintiffs do not seek damages against Hearing Officer Defendants, the defense of qualified immunity is not available to them.

### B. Absolute Judicial Immunity and Quasi-Judicial Immunity Do Not Apply Where Plaintiffs Seek Only Declaratory Relief.

Judicial immunity does not bar prospective relief, which is all Plaintiffs seek here. *Pulliam*, 466 U.S. at 53643. Although the Federal Courts Improvements Act, passed in response to *Pulliam*, sometimes bars suits for *injunctive* relief against judicial officers for judicial acts, it explicitly allows suits—like this one—for *declaratory* relief against judicial officers for judicial acts. 42 U.S.C. § 1983 ("[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."). Plaintiffs agree that Hearing Officer Defendants cannot be enjoined, and for this reason, Plaintiffs seek only a declaratory judgment. For the same reason that judicial immunity does not shield Hearing Officer Defendants from declaratory relief, quasi-judicial immunity presents no bar to declaratory relief.

### IV.   *Heck v. Humphrey* Does Not Apply.

Defendants make a sweeping claim that "the *Heck* doctrine applies to claims regarding probation detainers." Doc. 63 at 12. But *Heck v. Humphrey*, 512 U.S. 477 (1994), is inapplicable here because a judgment in Plaintiffs' favor would not necessarily result in their release from jail. Defendants' argument fundamentally misunderstands the *Heck* lines of cases, beginning with *Preiser v. Rodriguez*, 411 U.S 475 (1973). Plaintiffs thus explain this doctrine and clarify why this

case falls outside its scope and why *McBride v. O'Brien*, the unpublished Third Circuit case on which Defendants rely, Doc. 63 at 12, is plainly wrong.

    **A. The *Heck* Line of Cases Only Applies to § 1983 Actions That Would Necessarily Demonstrate the Invalidity of the Duration or Fact of Plaintiffs' Confinement.**

    *Heck* does not apply here because even if Plaintiffs get the relief they seek, this would not invalidate any conviction or sentence. The foundational principles underlying *Heck* originate in *Preiser*, so Plaintiffs begin their analysis there. In *Preiser*, the Supreme Court held that prisoners who seek immediate or speedier release based on constitutional violations must bring their claims in habeas rather than under § 1983. *Preiser*, 411 U.S. at 489. In reaching its decision, the Supreme Court noted that the "essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Id.* at 484. A prisoner's challenge to the validity of the "fact or duration" of this illegal confinement was held "as close to the core of habeas corpus as an attack on the prisoner's conviction." *Id.* at 489. As such, § 1983 is not the appropriate procedural vehicle for such a challenge.

    In *Heck*, the Court expanded on this principle when considering a different but related circumstance. A state prisoner brought a § 1983 action for damages, challenging the conduct of state officials who, the plaintiff claimed, had unconstitutionally caused his conviction by improperly investigating his crime and destroying evidence. *Heck*, 512 U.S. at 479. The Court held that where "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction," *id.* at 481-82, a § 1983 action will not lie "unless . . . the conviction or sentence has already been invalidated," *id.* at 487. Importantly, the Court clarified that, where the § 1983 action, "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment . . . , the action should be allowed to proceed." *Id.* (footnote omitted).

The Supreme Court further clarified the narrow scope of this doctrine in *Wilkinson v. Dotson*, 544 U.S. 74 (2005). There, state prisoners brought an action under § 1983 seeking declaratory and prospective injunctive relief, claiming that state parole procedures were unconstitutional. *Id.* at 76. The district court had dismissed the plaintiffs' claims, ruling that the claims were only cognizable in a habeas petition. *Id.* at 77. The Supreme Court disagreed, holding that "§ 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner." *Id.* at 81 (emphasis in original). The Court recognized that success for the plaintiffs could *eventually* lead to their release, but concluded that the availability of habeas did not preclude their § 1983 action because winning their § 1983 action would be an entitlement to a process, not immediate release. *Id.* The Supreme Court also permitted the plaintiffs to seek declaratory relief that the parole procedures were unconstitutional. *Id.* at 79-82; *see also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (finding that the plaintiff could pursue an injunction barring future unconstitutional procedures regarding the revocation of good-time credits under § 1983 because "a prayer for such prospective relief will not 'necessarily imply' the invalidity of a previous loss of good-time credits"); *Wolff v. McDonnell*, 418 U.S. 539, 554–55 (1974) (holding that plaintiffs could use § 1983 to obtain a declaration or enjoin the prospective enforcement of invalid prison regulations because victory would not necessarily mean immediate release or a shorter period of incarceration; the plaintiffs attacked only the wrong procedures, not the wrong result).

### B.  Victory for Plaintiffs Would Not Necessarily Result in Release From Jail.

The line of Supreme Court cases to which *Heck* belongs stand for the rule that an incarcerated person's § 1983 action is barred only *if* their success would necessarily demonstrate the invalidity of confinement or its duration, such that a judgment in their favor would necessarily result in immediate or speedier release from incarceration. This is simply not the case here.

9

Rather, Plaintiffs have repeatedly stated that this case is about Defendants' illegal use of probation detainers that are mechanically imposed at *Gagnon* I proceedings that fail to afford the constitutionally required procedural and substantive safeguards. Nowhere in the Complaint do Plaintiffs seek any relief that would imply that they were wrongly convicted of the criminal offenses for which they were placed on probation or that would undo any finding that they violated their probation (which has yet to occur at the *Gagnon* I phase). Plaintiffs do not contend that they could not be incarcerated subject to a probation detainer, only that Defendants may not do so without first affording appropriate protections and finding that such incarceration is necessary. It does not matter that victory for Plaintiffs may result in constitutionally compliant *Gagnon* I proceedings, at which Defendants *may* conclude that Plaintiffs should be released from jail.

The Third Circuit has repeatedly recognized this distinction. For instance, in *Grier v. Klem*, 591 F.3d 672, 677 (3d Cir. 2010), the Third Circuit held that an incarcerated person may bring a § 1983 claim to request fairer procedures "because seeking to invalidate state procedures 'will not 'necessarily imply the invalidity of [their] conviction[s] or sentence[s].'" *Id.* (quoting *Wilkinson*, 544 U.S. at 82). Similarly, in *Wright v. Cuyler*, 624 F.2d 455 (3d Cir. 1980), the Third Circuit held that the analogous *Preiser* doctrine did not foreclose a challenge to the Pennsylvania Bureau of Corrections' application of eligibility standards for prerelease furlough. Even though a finding by the court that the eligibility standards were unconstitutional would result in shortening the plaintiff's period of confinement, the court found that *Preiser* did not bar relief. It emphasized that the plaintiff's "demand for fair application of the furlough eligibility criteria . . . relates to the *manner* by which the prison authorities reach their decision and not the *outcome* of their decision." *Id.* at 458, n.5 (emphases added). Such a claim "goes not to the fact or duration of confinement but rather to the fairness of the decision-making process." *Id.*

Plainly, it is "irrelevant" that the relief Plaintiffs seek may better position them to get out of jail. *Grier*, 591 F.3d at 678. While Plaintiffs certainly hope that the fairer procedures requested would lead to an earlier release from incarceration, mere hope is insufficient to bar relief under *Heck*. *Id.* at 677.

### C.  The Unpublished Third Circuit Case Defendants Cite Is Inapposite.

Defendants hang their hat on an unpublished, non-binding Third Circuit case. Doc. 63 at 12. But *McBride v. O'Brien*, 646 F. App'x 277 (3d Cir. 2016) (per curiam), is wrong on both the facts and the law. This Court should disregard it.

> *1.   Incarceration Pursuant to a Probation Detainer Is Not a Lawfully Imposed Sentence of Incarceration for* Heck *Purposes.*

As a factual matter, *Heck* cannot possibly be read to apply to challenges to probation detainers. As noted, *Heck* only bars § 1983 claims that require the invalidation of a conviction or sentence. *See Heck*, 512 U.S. at 487. A key factual predicate is missing here. A probation detainer is not akin to a conviction, and time spent in jail because of a detainer is not the same as a lawfully imposed sentence.

A probation detainer is simply an order prohibiting an individual's release from jail. Doc. 1 ¶ 2. It is not predicated on any finding of guilt or wrongdoing. *See id.* ¶ 4. Instead, a detainer simply holds a person in jail until a process—such as the due process outlined in *Gagnon*—can be conducted to determine whether the person has violated the terms of their probation and may be lawfully detained. As such, a probation detainer always and by definition results in pre-adjudication detention—time spent in jail before a finding of guilt—not a sentence of incarceration. (That the pre-adjudication detention may retroactively become a lawfully imposed penalty for a probation violation after a *Gagnon* II adjudication does not alter this.) As such, even if a judgment in Plaintiffs' favor would imply that the detainer was invalid to begin with (which,

as explained above, it would not as contemplated by *Heck*), it would not matter because this case is not even in *Heck*'s ambit.

This Court should not read the (non-binding) *McBride* decision to be at odds with these principles. Indeed, the Third Circuit expressed a lack of clarity as to what the pro se litigant in *McBride* sought through his inartful pleadings. *See, e.g.*, *McBride*, 646 Fed. App'x at 278 ("*To the extent* that McBride alleges that his confinement on the detainer violates federal law,…" (emphasis added)). In ruling against the plaintiff on *Heck* grounds, the *McBride* court fundamentally misconstrued the nature of a probation detainer. This Court should not make the same mistake.

    *2.   Unlike* McBride*, This Case Does Not Go to the Core of Habeas.*

Even if this Court accepts *McBride*'s faulty premise that *Heck* could apply to some challenges to probation detainers, it would not apply here. In *McBride*, the plaintiff challenged "the fact or duration of his confinement." *See id.* at 278. This challenge went to the "core of habeas"; that is, plaintiff's incarceration as a result of the probation violation detainer. *See id.* (quoting *Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002)).  That is not what Plaintiffs do here. Plaintiffs have challenged the absence of constitutionally required procedural and substantive safeguards, including the failure to provide notice, an opportunity to present and confront evidence, and an independent decision-maker as prerequisites to a probable cause determination. *See Gagnon*, 411 U.S. at 786. Plaintiffs do not challenge the fact of their incarceration; it is simply a harm that flows from the underlying unconstitutional *Gagnon* I proceedings. A finding that Defendants systematically conduct *Gagnon* I in a constitutionally deficient manner would neither invalidate Plaintiffs' sentences or prevent any findings that they violated their probation at a future *Gagnon* II proceeding. Plaintiffs' claims, as actually pled, are not barred by *Heck*.

**V.   The *Rooker-Feldman* Doctrine Does Not Apply to Plaintiffs' Claims.**

The *Rooker-Feldman* doctrine bars federal district courts "from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). In recent years, the Supreme Court has repeatedly admonished that the doctrine is a "narrow" one. *Id.* at 464 (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (same). It is "confined to cases of the kind from which [it] acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284.

The Third Circuit has concluded that four requirements must be met for the *Rooker-Feldman* doctrine to apply: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (cleaned up). *Rooker-Feldman* does not present a jurisdictional bar to federal review when the plaintiff asserts not "merely" that the "state-court decisions were incorrect," *id.* at 172, but that "people involved in the decision violated some independent right," *id.* "[W]hen the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." *Id.* at 167. "[I]f the federal court's review does not concern 'the bona fides of the prior judgment,' the federal court 'is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment.'" *In re Philadelphia Ent. & Dev. Partners*, 879 F.3d 492, 500 (3d Cir. 2018) (quoting *Great W. Mining*, 615 F.3d at 169).

In *Geness v. Cox*, 902 F.3d 344, 349 (3d Cir. 2018), a pretrial detainee brought claims including a due process claim that he suffered prolonged detention without a hearing on his competence to stand trial. The Third Circuit held that *Rooker-Feldman* did not bar Geness's due process claim because (a) he was not a "state court loser" because his due process claim had not been presented to or ruled upon by a state court; and (b) he did not invite the district court to "review and reject the state court judgment" because his federal due process claim alleged deprivation of an "independent constitutional" right that arose irrespective of whether the state court's conclusion about his competence was correct. *See id.* at 360-61.

Plaintiffs' situation is analogous to that in *Geness* and, for the same reasons, the *Rooker-Feldman* doctrine does not apply here. Plaintiffs are not "state court losers" because they have not brought the due process claims raised in this lawsuit in a state forum and lost. Moreover, Plaintiffs are not asking this Court to overrule the decisions of the state court judges. They raise independent civil rights violations committed by Defendants who create a policy, and carry out practices, that deprive them of their rights to substantive and procedural due process. Plaintiffs seek an order protecting themselves and other similarly situated people from being unlawfully jailed in the future and compensating them individually for their injuries. Nowhere in the Complaint do Plaintiffs allege that the outcome of the *Gagnon* I proceeding was legally incorrect in their individual cases. This case is about the absence of necessary procedures and findings at those proceedings. To put it another way: If this Court finds that Defendants' practices for carrying out, and detaining people pursuant to, *Gagnon* I proceedings violates the Constitution in the ways alleged in the Complaint, that will not lift the detainers on which Plaintiffs are currently jailed. Although a favorable decision may result in further proceedings in the state court, it will not overturn any decision that has been made. Accordingly, *Rooker-Feldman* has no applicability here.

**CONCLUSION**

For the foregoing reasons, Hearing Officers' individual capacity motion to dismiss should

be denied.

Dated: January 6, 2023

s/ Leo Laurenceau                                          /s/ Dolly Prabhu

Sumayya Saleh (D.C. 1743427)                 Dolly Prabhu (PA 328999)
sumayya@civilrightscorps.org                    dprabhu@alcenter.org
Katherine Hubbard (D.C. 1500503)*        Jaclyn Kurin (D.C. 1600719)*
katherine@civilrightscorps.org                   jkurin@alcenter.org
Leo Laurenceau (Fla. 106987)*                Bret Grote (PA 317273)
leo@civilrightscorps.org                             bretgrote@abolitionistlawcenter.org
CIVIL RIGHTS CORPS                                  ABOLITIONIST LAW CENTER
1601 Connecticut Ave. NW, Suite 800        PO Box 8654
Washington, D.C. 20009                            Pittsburgh, PA 15221
Phone: (202) 844-4975                             Phone: (412) 654-9070

                                                           * Appearing *pro hac vice* in accordance with
                                                           Local Rule LCvR 83.2(B)

15