IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DION HORTON, et al., | ) |
| Plaintiffs | ) |
| v. | ) 22-cv-1391-NR |
| JILL RANGOS, et al., | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

Plaintiffs Dion Horton, Damon Jones, Craig Brownlee, Rahdnee Oden-Pritchett, Tate Stanford, and Elijah Bronaugh have sued various state and local officials, seeking to change what they allege is an unconstitutional process regarding probation detainers in Allegheny County. They allege that probationers' due-process rights are violated because they do not have a meaningful opportunity to be evaluated for bond or contest their continued detention. Defendants move to dismiss, arguing that the complaint fails to clear procedural hurdles or to state a proper claim. The Court has scheduled a preliminary injunction hearing on the matter, which will be held on April 18, 2023.

After carefully reviewing the parties' arguments on the motions to dismiss and the applicable law, the Court finds that at least some plaintiffs state proper claims against each defendant. Therefore, the motions to dismiss, if granted, only narrow the scope of relief available, rather than eliminate any count or defendant entirely. Therefore, the Court will deny the motions without prejudice and address the remaining arguments that go to the scope of relief at a later stage in the case.

1

## FACTUAL BACKGROUND

Taking the facts alleged in the complaint as true, as required, the facts of this case are as follows. The named plaintiffs are probationers who have been accused of violating the terms of their release. Many of them picked up new charges. ECF 1, ¶¶ 40 (Mr. Stanford), 41 (Mr. Bronaugh), 42 (Mr. Horton), 44 (Mr. Jones), 46 (Mr. Brownlee). But many were deemed eligible for release by magistrate judges who evaluated their respective cases. *Id.* at ¶¶ 40 (Mr. Stanford), 41 (Mr. Bronaugh), 42 (Mr. Horton), 44 (Mr. Jones), 47 (Mr. Oden-Pritchett). Nevertheless, they remained in jail because of probation detainers. *Id.* at ¶¶ 40-48. One plaintiff – Mr. Jones – actually *had been* released on his new charges, but he was re-arrested because those alleged new crimes constituted probation violations. *Id.* at ¶¶ 44-45.

Once detained, probationers remain incarcerated until they undergo a "*Gagnon* I" hearing, during which a hearing officer considers whether they should be jailed until a final determination of violation is made at a later hearing. *See id.* at ¶ 9. But detainees do not have the opportunity to consult their public defender ahead of time to prepare a defense. *Id.* at ¶ 14. And the hearings are very brief; the majority last only a few minutes. *Id.* at ¶ 69. No witnesses or evidence are presented. *Id.* at ¶ 14. Nor do hearing officers conduct individualized assessments regarding the need for detention to prevent flight or ensure public safety. *Id.* at ¶¶ 75, 84. Instead, they rely on mandatory detention policies, which stem from certain types of violations or from judges who have decided to institute "no lift" policies. *Id.* at ¶¶ 18-22. Hearing officers ultimately provide a judicial officer with a recommendation of either detention or release. *Id.* at ¶ 16. Judicial officers usually rubber-stamp detention recommendations. *Id.* at ¶¶ 17, 81. As a result, release is extremely rare. *Id.* at ¶ 77.

Detention decisions are only reviewed if the detainee files a motion to lift the detainer. *Id.* at ¶ 110. But very few have access to an attorney who can do so. *Id.* at

¶ 111. And judges often deny motions for review without a hearing or explanation. *Id.* at ¶¶ 28,118. So probationers sit in jail until the question of their violation is finally resolved, which can take months or even years. *Id.* at ¶ 9.

Plaintiffs contend that the existing process outlined above falls short of due process requirements under both the federal and Pennsylvania constitutions. They bring procedural due-process claims under each, as well as "hybrid" substantive-procedural due-process claims under each.

## DISCUSSION & ANALYSIS

Defendants, represented by separate counsel, bring three motions to dismiss. These motions invoke various legal doctrines to block plaintiffs' claims, but none bars relief completely. Moreover, many arguments are fact-dependent and therefore cannot be resolved on the current record.

**I.    Defendants' procedural arguments fail.**

   A.    Standing

Defendants move to dismiss for lack of standing, but the Court finds that at least some of the plaintiffs have standing to bring their claims. Article III standing requires an injury-in-fact that is fairly traceable to the defendants' challenged conduct and that is likely to be addressed by a favorable decision from this Court. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Each of those elements is met here.

Defendants argue that a concrete injury has not occurred yet. ECF 65, p. 9. But plaintiffs who underwent *Gagnon* I hearings allege that those hearings lacked due-process protections required by the Constitution. Many remain incarcerated with no end date in sight and no real opportunity to re-raise the issue – a continuation of the initial injury.[1] And those that await their *Gagnon* I hearing expect imminent

---

[1] At the time of briefing, some plaintiffs had been released from custody. The Court notes that that change in status may limit those plaintiffs' claims and the type of relief they can seek.

injury from this inadequate process. Therefore, plaintiffs' injuries are actual and/or imminent, not hypothetical or speculative. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).

Defendants also argue that there is insufficient causal connection between plaintiffs' detentions and the *Gagnon* hearing process. ECF 65, p. 11. Not so. The complaint alleges that the probation detainer process is the but-for reason plaintiffs are in jail, because they were otherwise eligible for release. ECF 1, ¶¶ 40, 41, 42, 44, 46, 47. And it alleges that defendants are key participants in this process. *Id.* at ¶¶ 51 (Judge Rangos and Director Scherer approved the policy), 52 (Warden Harper helps execute the policy), 54 (Judge Mariani and Judge Bigley issued no-lift policies), 55 (Hearing Officers oversee deficient hearings).

Finally, Judge Mariani argues that plaintiffs do not have standing because they do not plausibly allege that they would have actually been released under a different procedure. ECF 50, p. 5. This argument misses the mark. For one thing, many plaintiffs allege that magistrate judges had in fact found them eligible for bond. ECF 1, ¶¶ 40, 41, 42, 44, 47. For another, plaintiffs allege a systemic injury – a constitutionally deficient process that led to their detention. ECF 66. Even if the end result would have been the same, plaintiffs contend that probationers should have received a fairer opportunity to present their case for release. *Id.* at p. 4. Therefore, if the process is improved – even if the end result does not change – there is "a substantial likelihood that [that] requested relief will remedy the alleged injury in fact." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 143 (3d Cir. 2009). This is sufficient to meet the redressability requirement.

Accordingly, plaintiffs have standing to bring claims on their behalf and on behalf of others who are similarly situated.

B. *Rooker-Feldman*

Defendants next argue that this Court may not rule on plaintiffs' claims because of the *Rooker-Feldman* doctrine, which prevents lower federal courts from effectively overruling state court judgments. ECF 63, p. 12. For this doctrine to apply, a federal plaintiff must have lost in state court, complain of injuries caused by state-court judgments which were rendered before the federal suit was filed, and invite a district court to review and reject that judgment. *Van Tassel v. Hodge*, 565 F. App'x 135, 138 (3d Cir. 2014).

Here, defendants classify plaintiffs as "state-court losers" because the existing probation detainer process resulted in orders for their detention. But plaintiffs do not invite this Court to review and reject those particular detention orders. That is, they "do not ask the Court to mandate any particular outcomes regarding their detained status. What they seek in this suit is only to ensure that the *process*…is constitutionally adequate." *Frazier v. Prince George's Cnty.*, No. 22-1768, 2023 WL 375177, at *6 (D. Md. Jan. 24, 2023) (emphasis in original). Relief in this case would not necessarily reverse any state-court decree, because "it is entirely possible that a different [ ] process would still result in the same bail outcome." *Id*. Therefore, the Court finds that *Rooker-Feldman* does not apply here.

C. *Younger* Abstention

Judge Mariani asserts that this Court should decline to exercise jurisdiction by abstaining under *Younger v. Harris*. But *Younger* is intended to be a narrow exception that applies only in "exceptional" circumstances. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). It requires that a federal suit interfere with an ongoing state proceeding that implicates an important state interest, and that plaintiffs have an adequate opportunity to litigate their constitutional challenge in that state proceeding. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). The last requirement is not satisfied here.

Specifically, "the issue of [ ] release is entirely collateral to the question of an individual's criminal guilt or innocence." *Frazier*, 2023 WL 375177, at *6. That is, ensuring that probationers have a fair opportunity to obtain release while awaiting their revocation hearing does not make it more or less likely that they ultimately would be found to have violated their probation. Therefore, the Bail Reform Act-style analysis for pre-hearing release is not part of a defense to probation revocation.

Moreover, though procedures nominally exist for detainees to obtain review, plaintiffs allege that in practice this route is unavailable because detainees have little access to lawyers while detained. ECF 1, ¶ 27. And even when they manage to file, "[j]udges routinely delay ruling on these motions, and often deny them without a hearing or even an explanation." *Id.* at ¶ 28. Thus, by the time the *Gagnon*-II merits hearing occurs, probationers will have been subject to lengthy incarceration without sufficient process – the harm will already have occurred. This means that the underlying probation proceedings (or lack thereof) do not provide an adequate avenue to raise the detention issue, and *Younger* abstention is not appropriate. *Cf. Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975) (in a pretrial release context, relief "was not directed at the state prosecutions as such, but only at the legality of [ ] detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution. The order to hold preliminary detention hearings could not prejudice the conduct of the trial on the merits." (citations omitted)).

D.  *Heck v. Humphrey*

Defendants lastly invoke *Heck v. Humphrey*, which bars Section 1983 lawsuits that civilly challenge a conviction or sentence unless the criminal case ends in the plaintiff's favor – that is, if the conviction or sentence is "reversed on direct appeal, expunged by executive order, declared invalid by state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486-87 (1994). But as already explained, plaintiffs are

6

challenging the *process* surrounding probation detention – not individual detention orders. If plaintiffs prevail, they would not necessarily be released. Instead, they would undergo a new evaluation, which well may lead to the same recommendation for detention. *Heck* therefore does not bar all of plaintiffs' claims.[2] *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) ("§ 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner." (emphasis in original)).

## II. Defendants' 12(b)(6) arguments require additional factual development.

As part of their motions to dismiss, defendants contend that plaintiffs have failed to present sufficient factual allegations plausibly to state a claim on which relief may be granted. ECF 50, § 4; ECF 65, p. 17. At this stage and on this limited record, the Court disagrees. The complaint presents some particulars, not just general accusations. As outlined previously, plaintiffs were initially deemed eligible for release, but a probation detainer kept them in jail. Ahead of their *Gagnon* I hearings, "[i]ndividuals do not have an opportunity to consult with their assigned public defender," and "no witnesses or evidence are ever presented" at the hearing. ECF 1, ¶ 14, 74. The hearings are extremely short. *Id.* at ¶ 69. Additionally, the hearings do not appear to include individualized assessment of how best to protect the community or ensure court appearance. *Id.* at ¶ 15, 75. In some cases, detention is mandatory for certain violations or for supervisees of certain judges. *Id.* at ¶¶ 18-

---

[2] Again, the Court notes that claims by certain plaintiffs who have been released may be more limited. For example, if the period of detention was subsequently converted into a lawful sentence for violating probation, a ruling that detention was unconstitutional would necessarily challenge the validity of that conviction and run afoul of *Heck*. Ultimately, the Court finds it more appropriate and less procedurally complicated to treat the scenario of the released plaintiffs as part of fashioning any possible relief, as opposed to mandating the dismissal of certain aspects of certain claims by certain plaintiffs.

22, 63-64, 84, 97-98.  Ultimately, it can take months or years before final violation decisions are made.  *Id.* at ¶ 9.  During that time, detainees have very little access to lawyers.  *Id.* at ¶¶ 111, 113.

The complaint also presents specific allegations as to particular plaintiffs.  For instance, Mr. Horton was ordered "to stay in jail with no explanation and with no option to bond out."  *Id.* at ¶ 3.  His hearing lasted only a few minutes.  *Id.* at ¶ 43.  Mr. Jones was re-arrested for violating probation, despite having been released on the underlying charges.  *Id.* at ¶ 44.  And Hearing Officers refused to lift detainers on Mr. Brownlee and Mr. Oden-Pritchett because of Judge Mariani and Judge Bigley are their supervising judges.  *Id.* at ¶¶ 46, 48, 98-100.

Based on these alleged facts, the Court finds that  plaintiffs plausibly state claims that their due-process rights were violated.  Further details of the county policy itself should be fleshed out in discovery.  The same is true regarding what exactly happened – or didn't happen – at each plaintiff's *Gagnon* I hearing, who was involved, and whether or not plaintiffs attempted to contact attorneys or file petitions seeking review of their detentions.

### III. Immunity doctrines do not eliminate entire claims or defendants.

Finally, the motions to dismiss invoke various immunity doctrines, such as sovereign immunity, judicial immunity, qualified immunity, and the like.  These arguments, if accepted, would not foreclose all types of relief against any defendant.  For instance, "[n]either absolute judicial immunity nor the Eleventh Amendment bar claims seeking prospective injunctive or declaratory relief against a state official." *Andrews v. Hens-Greco*, 641 F. App'x 176, 180 (3d Cir. 2016).  Further, "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Quisenberry v. Ridge*, No. 20-1824 (2022 WL 1443750, at *3 (W.D. Pa. May 6, 2022) (Ranjan, J.) (citation omitted).

Because these doctrines would only limit the scope of relief, these issues are better addressed as part of the preliminary-injunction motion, on a motion for summary judgment, or at trial. Defendants may re-raise them at that time.

* * *

For the foregoing reasons, the three motions to dismiss are hereby **DENIED.**

DATE: April 14, 2023                              BY THE COURT:

                                                  /s/ *J. Nicholas Ranjan*
                                                  United States District Judge