# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DION HORTON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JILL RANGOS, *et al.*, <br><br> Defendants. | Case No. 22-cv-1391 |

## PLAINTIFFS' REPLY TO DEFENDANT MARIANI'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL PRELIMINARY INJUNCTION BRIEF

### INTRODUCTION

Defendant Mariani uses his brief to cast aspersions and demean Plaintiffs and their counsel, despite the Court's specific admonition against such behavior. *See* Judge Ranjan's brief-writing preferences ¶ 7. The rest of his defense consists of tangential quibbles that do not make a dent in the arguments Plaintiffs have advanced regarding their entitlement to a preliminary injunction. The Court should disregard Defendant Mariani's attempts to distract from Plaintiffs' clear entitlement to relief and enter the requested preliminary injunction.

### DISCUSSION

### I. The Requested Injunction Is Prohibitory In Nature.

As Plaintiffs have already explained, Doc. 121 at 12-15, the injunction they seek is prohibitory, not mandatory, because it would maintain the status quo in which members of the mandatory detention subclasses are not jailed unconstitutionally. Defendant Mariani cites only one case in support of his argument to the contrary: *Hope v. Warden York Cnty. Prison*, 972 F.3d 310 (3d Cir. 2020) ("*Hope II*"). *See* Doc. 127 at 4. According to him, the Third Circuit in *Hope II* held

1

that the "proposed injunction for release of immigration detainees was mandatory." *Id.* It seems Defendant Mariani intended to cite the Third Circuit's earlier decision *Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 161-62 (3d Cir. 2020) (*Hope I*), where the Third Circuit actually held that the injunction ordered "mandatory, affirmative relief." *See id.* at 162.

Regardless, *Hope* has no application here. In *Hope*, a group of immigrant detainees "sought immediate release," arguing that "their continued detention during the COVID-19 pandemic puts them at imminent risk of death or serious bodily injury." *Hope I*, 956 F.3d at 158. The Third Circuit concluded that the injunction ordering their release was mandatory (though it did not actually analyze the mandatory versus prohibitory question). *Id.* at 161-62; *see also* Doc. 121 at 14 ("[T]he Third Circuit has not weighed in on the question of mandatory or prohibitory injunction in a case like this.").

*Hope* is therefore distinguishable on two counts. First, the relief the detainees sought was immediate release—not constitutionally compliant detention procedures, as Plaintiffs request here. Second, while the Third Circuit did not define the status quo in *Hope*, it logically was the position petitioners were in when they were lawfully detained. *See generally Hope I*, 956 F.3d at 161-62. The detainees' claimed entitlement to release came to be only because of a post-incarceration event—an unforeseen global health emergency. So an order seeking release would obviously alter that status quo. But here, the status quo is the position subclass members are in before being illegally incarcerated. *See Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3rd Cir. 2004) ("status quo" refers to "the last peaceable, noncontested status of the parties"). An order enjoining the warden from jailing subclass members in the absence of certain procedural and substantive safeguards would not alter that. Doc. 121 at 13-14.

While *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017), may be non-binding, it is the clearest authority that exists on the question implicated here. Notably, Defendant Mariani does not engage with the Ninth Circuit's analysis in that case or substantively explain why this Court should disregard it. *Cf.* Doc. 67 at 8 (conducting substantive analysis of why the Court should find a non-binding case unpersuasive). The Court should follow the Ninth Circuit's lead and find that the injunction Plaintiffs seek is prohibitory.

With respect to Defendant Mariani's rhetorical arguments, it is implausible that the injunction would come "at significant expense of time and resources." Doc. 127 at 4. As explained, "Defendants already gather the relevant parties and conduct *Gagnon* I proceedings, albeit in name only." Doc. 3 at 24. As a result, complying with the injunction would be minimally administratively or fiscally burdensome—and though it has been eight months since Plaintiffs brought suit, Defendants have yet to demonstrate otherwise.

Separately, the proposed injunction is not "bizarre." Doc. 127 at 4 n.5. In fact, "[t]here are plenty of cases allowing injunction actions like this one." *McNeil v. Cmty. Prob. Services, LLC*, 945 F.3d 991, 996 (6th Cir. 2019) (collecting cases). In *McNeil*, the Sixth Circuit affirmed the grant of a preliminary injunction against the county's and the sheriff's enforcement of bail requirements. *Id.* at 993. In so doing, it explained why it is okay for incarcerated probationers to seek injunctive relief against the sheriff (the functional equivalent of the warden in Tennessee), even where judges are responsible for setting the unaffordable bail amounts that act as a barrier to release. *See id.* at 995-96. The sheriff, like Warden Harper, is "actively involved with administering the alleged violation" by enforcing unconstitutional detention orders. *Id.* at 995 (cleaned up). At the end of the day, "the plaintiff is the master of the complaint" and is "free to sue the sheriff" for injunctive relief in a case challenging illegal incarceration. *Id.* at 996 (cleaned up).

## II. Plaintiffs Have Established the Facts Underlying the Violations They Allege.

As the Court acknowledged, Plaintiffs have developed a "comprehensive" factual record. Preliminary Injunction Hearing Transcript (Hrg. Tr.) at 184:17-19. It is not lacking as to any aspect of their preliminary injunctive claims. While the burden of proof lies with Plaintiffs, courts customarily grant preliminary injunctions "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Kos Pharm., Inc.*, 369 F.3d at 718. The evidence Plaintiffs introduced is far more than enough to clear this hurdle.

Though Defendant Mariani addresses the alleged insufficiency of Plaintiffs' evidence as to each claim separately, *see* Doc. 127 at 6-12, 7-19, Plaintiffs address them jointly given the overlapping nature of the relevant evidence. Specifically, evidence of Plaintiffs' inability to present and confront evidence overlaps with the evidence proving the existence of categorical no-lift policies.

### A. Notice

Plaintiffs' testimony that they found out moments before their *Gagnon* I proceedings that they were being taken to an unspecified hearing does not amount to "notice" for the purpose of due process. *See* Doc. 127 at 7. Defendant Mariani faults Plaintiffs for "citing no authority" that they were entitled to notice with adequate time to prepare. *Id.* But this is an "elementary and fundamental requirement of due process." *Mullane v. C. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Indeed, a "primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful." *City of W. Covina v. Perkins*, 525 U.S. 234, 240 (1999). To that end, notice must "apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978). It is evident that snatching probationers from their jail cells moments before the

proceeding, with no explanation of the purpose of the proceeding and no opportunity to meet with counsel to prepare, does not constitute adequate notice.

Plaintiffs have sufficiently shown that the lack of notice in their cases was not an "anomalous legal error[]." Doc. 127 at 8. *See* Hrg. Tr. at 11:12-12:7; 37:11-21; 87:24-88:11; Doc. 3-1, Ex. 10, Johnson Decl. ¶ 4 ("I did not receive any notice of when it was going to happen."); *see also* Doc. 3-1, Ex. 11, Frazier Decl. ¶ 4; Ex. 14, Cordoba Decl. ¶ 4. Defendant Mariani's speculation that the coronavirus pandemic is to blame, Doc. 127 at 8 n.7, is not tenable. All Plaintiffs underwent their *Gagnon* I proceedings in 2022, well after courts had resumed functioning as usual. In fact, all but two of the Plaintiffs had their *Gagnon* I proceedings after Defendants terminated remote access to the *Gagnon* I proceedings—i.e. after the court system began transitioning back to pre-pandemic operations. *See* Doc. 3-1, Ex. 3, Redcross Decl. ¶ 4 (explaining that the court system cut off remote access to the Gagnon I proceedings beginning March 2022).

Defendant Mariani spends roughly two pages arguing that defense counsel may have had strategic reasons to avoid making argument during Plaintiffs' *Gagnon* I proceedings. Doc. 127 at 8-10. This is irrelevant to notice, though. And again, he flips the standard on its head—it is the *government* that must provide the procedural protections that due process requires. *See* Doc. 121 at 7. Whether and what strategic decisions probationers or their counsel may make when they get notice has nothing to do with whether the government must notify them of the proceeding in the first place.

**B.      Hearing Officers Refuse To Consider Evidence When A Mandatory Detention Policy Is At Play.**

It is also indisputably clear that when it comes to mandatory detention, probationers *and their counsel* are deprived of the right to present or challenge evidence. Plaintiffs will not rehash

the proof of this yet again, but the evidence consistently shows that Hearing Officers refuse to make case-specific considerations for people who fall in one of the three mandatory detention categories. *See* Doc. 82 at 7-8; Doc. 82 at 4-5; *see also* Doc. 3 at 10 (showing that public defenders are resigned to the reality that hearing officers will not release their clients because of judicial preferences). (Plaintiffs also contend that in *all* cases, probationers are deprived of the right to present or challenge evidence in any meaningful way, but that is outside the scope of the preliminary injunction they seek.)

Contrary to what Defendant Mariani contends, Doc. 127 at 17, Plaintiffs need not produce a smoking gun admission from Judge Mariani or Judge Bigley to prove that they enforce a categorical no-lift policy. *See, e.g.*, *Costantino v. City of A. City*, 152 F. Supp. 3d 311, 319–20 (D.N.J. 2015) (explaining different ways one could prove the existence of a custom to establish *Monell* liability). Hearing Officer O'Brien's testimony that it is "institutional knowledge" that Hearing Officers should not recommend detainer lifts for people supervised by Judges Mariani and Bigley, Doc. 82 at 7-8, is enough. It is also not hearsay. *See* Fed. R. Evid. 801(d)(2)(D). And the data showing that Hearing Officers recommend detainer lifts in a negligible number of these judges' cases, *see* Doc. 82-1, Ex. 5, Rule 1006 Decl. ¶ 18, must be considered in context of Hearing Officer O'Brien's testimony (and the courtwatch observations, *see* Doc. 121 at 5). This *is* the "evidence to explain the difference." Doc. 127 at 18. Plaintiffs have never described Hearing Officers as "catspaws," Doc. 127 at 18, but the evidence in its totality establishes the admonitions Hearing Officers received from Judge Mariani and Judge Bigley are the moving force behind Hearing Officers' refusal to lift detainers in those cases.

Against this backdrop, it does not matter what strategic decisions defense counsel or their client might make, before, during, or after the *Gagnon* I proceedings. Hearing Officers completely

6

shut the door, and any advocacy (in the form of argument or presentation of evidence) is in vain. This is enough to show that Defendants are not upholding their end of the constitutional bargain.

### III. Supreme Court Precedent Is On The Side Of The Substantive Due Process Right Plaintiffs Seek to Enforce.

Plaintiffs have comprehensively explained how the substantive due process right they urge finds its home in decades of Supreme Court precedent, such that Defendants may not detain them pending their *Gagnon* II hearing without a finding that their detention is necessary to serve a legitimate government interest. The question this case presents is not whether the outcome of any particular *Gagnon* I proceeding would have been different if Defendants followed the Constitution, but whether they are required to provide basic constitutional protections before depriving probationers of their liberty. (Obviously, yes.) In their last brief, Plaintiffs offered two additional bases that elucidate why substantive due process requires a suitability-for-release determination. *See* Doc. 121 at 16-18. Defendant Mariani's attempts to undermine these arguments are unavailing.

First, Defendant Mariani takes issues with the fact that *Bell v. Burson* and *Schall v. Martin* did not involve "people already adjudicated of crimes, or people with a limited liberty interest, or the penological or supervisory interests." Doc. 127 at 16. So what. None of these factors vitiate long-established constitutional due process rights, and principles of due process transcend the specific case type. When the Supreme Court said in *Bell* that "[t]he hearing required by the Due Process Clause must be meaningful . . . and appropriate to the nature of the case," 402 U.S. 535, 541–42 (1971) (cleaned up), it was speaking in general terms.

Second, Defendant Mariani misses the point of Plaintiffs' argument that *Morrissey*'s dicta should be read in light of the *Gerstein* and *Salerno* duality. His argument that *Gagnon* and *Morrissey* are not "Fourth Amendment cases" because they do not explicitly refer to the Fourth Amendment is meritless—they are cases about the procedural protections that apply to the

probable cause requirement, which is found in the Fourth Amendment. *See, e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 485 (1972) (the purpose of the "preliminary hearing" for an arrested parolee is "to determine whether there is probable cause" to believe they violated parole). For that reason, *Morrissey*'s dicta stating that a probable cause finding "would be sufficient to warrant the parolee's continued detention," *id.* at 487, is properly read to mean that it would be enough for purposes of the Fourth Amendment. But as the *Salerno* line of cases makes clear, detention that satisfies the Fourth Amendment (as in the case of pretrial detention where a *Gerstein* probable cause finding has been made) can still violate the substantive due process liberty right if there is no finding that such detention is necessary. *See United States v. Salerno*, 481 U.S. 739, 741 (1987) (finding the Bail Reform Act's prohibition on detention unless "the Government demonstrates by clear and convincing evidence after an adversary hearing that no release conditions 'will reasonably assure . . . [public] safety" satisfied due process); *Foucha v. Louisiana*, 504 U.S. 71, 81 (1992) (finding that absent such a "sharply focused scheme," the state could not detain a mentally ill acquittee).

Defendant Mariani's reliance on *Gagnon* and *Morrissey* to attempt to resolve Plaintiffs' substantive due process claim is misplaced. *Gagnon* and *Morrissey* were strictly procedural due process cases. *See Morrissey*, 408 U.S. at 484 (after concluding that the revocation of parole results in a deprivation of liberty, "turn[ing] to the nature of the process that is due"). Although Defendant Mariani conflates the two, procedural and substantive due process are not the same. *See, e.g.*, *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139–40 (3d Cir. 2000) (distinguishing between procedural and substantive due process). Procedural due process is concerned with the procedures necessary to safeguard against a deprivation of life, liberty, or property. *See id.* at 138. A procedural due process right is not necessarily designed to protect a substantive due process right. *See id.* at 139. The "Due Process Clause's primary protection . . . is its requirement of

fair procedures—that is, of procedural due process," which may, in turn, "give rise to a substantive due process claim." *Id.* As Plaintiffs have explained, their substantive due process claim is properly analyzed under a long line of substantive due process case law prohibiting the government from jailing people without a showing that such detention is necessary. *See* Doc. 3 at 21-25.

## IV. The Proposed Preliminary Injunction Would Not Usurp Judicial Authority.

Plaintiffs do not purport to dictate who should make suitability-for-release determinations. They have made that clear from the onset of this litigation. *See* Doc. 2-1 (Proposed Order) at 2 (referring generically to a "judicial officer"). They have since twice affirmed this point. *See* Doc. 90 at 14; Doc. 121-1 at 2. Indeed, Plaintiffs noted that "if the Court were to order injunctive relief, Defendants may not *want* Hearing Officers to preside over *Gagnon* I proceedings, given their position that the decision to lift a detainer is within the sole purview of a criminal court judge." Doc. 90 at 14. But ultimately, that is not Plaintiffs' (or the Court's) call to make. Plaintiffs ask the Court to make a finding as to what the applicable constitutional standard is, and to issue an injunction requiring Defendants Judge Rangos, Former Director Scherer, and Warden Harper to safeguard that right. But the *how* is up to them. And they can ensure that the implementation of the injunctive relief does not "invert the supervising court's relationship to its administrative adjudicatory arms." Doc. 127 at 20.

On this note, it bears emphasizing that Plaintiffs seek only declaratory relief against Defendant Mariani. *See* Doc. 1 ¶ 54. Defendant Mariani is not a target of Plaintiffs' motion, and if the Court enters the requested injunction, he will not be enjoined. *See generally* Doc. 121-1.

9

Dated: June 9, 2023.

/s/ Sumayya Saleh
Sumayya Saleh (D.C. 1743427)
sumayya@civilrightscorps.org
Katherine Hubbard (D.C. 1500503) †
katherine@civilrightscorps.org
Leo Laurenceau (D.C. 90007729) †
leo@civilrightscorps.org
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Phone: (202) 894-6132

/s/ Dolly Prabhu
Dolly Prabhu (PA 328999)
dprabhu@alcenter.org
Jaclyn Kurin (D.C. 1600719) †
jkurin@alcenter.org
Bret Grote (PA 317273)
bretgrote@abolitionistlawcenter.org
ABOLITIONIST LAW CENTER
PO Box 8654
Pittsburgh, PA 15221
412-654-9070

† admitted *pro hac vice*