IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DION HORTON, et al., | ) |
| | ) |
| Plaintiffs | ) |
| | ) 22-CV-1391-NR |
| v. | ) |
| | ) |
| JILL RANGOS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

**J. Nicholas Ranjan, United States District Judge**

Before the Court is the question of whether it should convert its decision on Plaintiffs' preliminary-injunction motion into a summary-judgment decision. On December 22, 2023, the Court notified the parties of its intent to do so. ECF 140. On January 24, 2024, Plaintiffs filed a response to that notice (ECF 144); on February 14, 2024, Defendants filed their responses (ECF 145, ECF 146).

After careful review of the complaint, the Court's prior decision on the preliminary-injunction motion, the exhibits that were submitted as part of that motion, evidence presented at the preliminary-injunction hearing, and the parties' responses to the notice, the Court will enter summary judgment on Counts I and II of the complaint, and decline to exercise supplemental jurisdiction over Counts III and IV, the state-law claims.[1]

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] The Court previously set forth the facts and procedural background in this case. *Horton v. Rangos*, No. 22-1391, 2023 WL 8865872 (W.D. Pa. Dec. 22, 2023) (Ranjan, J.). Because the parties are familiar with the record, the Court will not repeat the facts and procedural background here.

- 1 -

matter of law." Fed. R. Civ. P. 56(a).  At summary judgment, the Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up).  The moving party bears the initial burden to show the absence of a genuine dispute of material fact, and "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" summary judgment is improper.  *Id.* (citation omitted).

But if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is warranted.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Id.* at 326.  Under Rule 56, "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f).  "From a procedural standpoint, the Federal Rules of Civil Procedure clearly require that parties be given ten days notice that a motion for summary judgment is being considered." *Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215, 223 (3d Cir. 2004). "The purpose [of giving notice] is to give the losing party the opportunity to marshal all the evidence that would be used to oppose summary judgment." *Forrest v. Parry*, 930 F.3d 93, 111 (3d Cir. 2019).

Courts can treat a preliminary-injunction request as a motion for summary judgment "if there are no issues of material fact and the party is entitled to judgment as a matter of law." *Krebs v. Rutgers*, 797 F. Supp. 1246, 1252-53 (D.N.J. 1992). "A district court might also convert a decision on a preliminary injunction into a final disposition of the merits by granting summary judgment on the basis of the factual record available at the preliminary injunction stage[,]" so long as the notice requirements of Rule 56 are met. *Air Line Pilots Ass'n, Int'lr v. Alaska Airlines, Inc.*, 898 F.2d 1393, 1397 n.4 (9th Cir. 1990).

Summary judgment is properly granted *sua sponte* as to a non-moving party when notice is given and there is no genuine dispute of material fact. *Lee v. Sixth Mt. Zion Baptist Church of Pittsburgh*, 903 F.3d 113, 118 (3d Cir. 2018) (affirming *sua sponte* grant of summary judgment against a non-moving party where the district court's order providing notice specifically referenced Rule 56(f) and gave the parties an opportunity "to present all relevant arguments and evidence"). If a plaintiff offers no explanation as to how it would benefit from further evidence or briefing, summary judgment is proper. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 280 (3d Cir. 2010).

## DISCUSSION & ANALYSIS

### I. Plaintiffs have not shown that a genuine dispute of material fact exists that would preclude summary judgment on Count II.

Count II is clearly foreclosed by the Court's prior finding that there is no constitutional right to a release-suitability determination as part of the *Gagnon I* hearing. This count concerned Defendants' alleged mandatory detention policies, and was the clear focus of the preliminary-injunction proceedings. As the Court previously noted, "While the Court has reviewed and considered the extensive evidentiary record, ultimately, the motion before the Court is resolved almost entirely on the law. At its core, Plaintiffs' due-process claims essentially distill down to this

question: are probationers entitled to an initial detention hearing and bail or release determination when arrested for a probation violation?" *Horton v. Rangos*, No. 22-1391, 2023 WL 8865872, at *8 (W.D. Pa. Dec. 22, 2023) (Ranjan, J.). Based on that question of law, the Court then concluded that well-settled Supreme Court decisions make clear that there is no right to a release determination:

> Plaintiffs contend that the federal and state constitutions require more protections than Allegheny County provides. But they are wrong under the well-settled Supreme Court precedents of *Morrissey* and *Gagnon*. Due process as applied to probationers requires that an independent officer determine at the *Gagnon I* hearing "whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 485 (1972). The probationer must be given notice of this hearing and its purpose, and is permitted to speak and present exhibits or individuals to testify. *Id*. at 486-87. The hearing officer then determines whether probable cause exists to hold the probationer until a final revocation hearing. *Id*. at 487. The final revocation hearing (the *Gagnon II* hearing) is a "somewhat more comprehensive hearing prior to the making of the final revocation decision." *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Nothing in these decisions requires that a probation officer or judge also make a bail or release decision as part of the *Gagnon* hearings. Indeed, *Morrissey* presumes that so long as the procedures for the hearings are satisfied, the probationer can be detained with really no further inquiry or procedure at all. *Morrissey*, 408 U.S. at 487 ("Such a [probable cause] determination would be sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision.").

*Horton*, 2023 WL 8865872, at *8-9.

Thus, the Court's prior holding was premised fundamentally on a legal question. No additional discovery or facts will change the Court's legal determination. Summary judgment is therefore appropriate on Count II of the complaint.

## II.     Plaintiffs have not shown that a genuine dispute of material fact exists that would preclude summary judgment on Count I.

The Court reaches the same conclusion as to Count I.  As part of the decision on the preliminary-injunction motion, the Court noted that it was unclear whether Plaintiffs were bringing a standalone claim that, irrespective of Defendants' detention policies, they nonetheless violated the basic procedures of *Gagnon* (*i.e.*, no notice of the hearing, no right to present evidence, no probable-cause determination at the *Gagnon I* hearing, and excessive delays in scheduling the *Gagnon I* and *II* hearings).  *Horton*, 2023 WL 8865872, at *12 n.10.  Out of an abundance of caution, the Court construed Count I as presenting standalone violations, and then concluded that injunctive relief was not appropriate because Defendants complied with procedures set forth by *Gagnon*.  *Id.* at *12.

In their response to the Court's notice, Plaintiffs make clear that they are, in fact, alleging a standalone claim.  *See* ECF 144, p. 8 ("despite the Court's understanding to the contrary, Plaintiffs did bring a standalone claim challenging Defendants' failure to comply with *Morrissey* and *Gagnon*." (cleaned up)).  Assuming that to be the case,[2]  Plaintiffs haven't raised a genuine dispute of fact for this claim to proceed.

Plaintiffs primarily argue that they need more discovery.  The Court disagrees.  The parties conducted discovery over an approximately four and a half-month period.  During that time, the Court ordered initial disclosures to be made, which should have captured virtually all of the relevant documents in this case.  Beyond that, the Court authorized discovery of 10 requests for production and 20 hours of depositions per side.  ECF 17.  The Court also considered and granted various requests to modify the

---

[2] It's still unclear to the Court whether such a claim has been brought, or at least properly alleged.  For example, all of the Defendants in this case are named solely due to their role in implementing detention policies and practices.  ECF 1, ¶¶ 49-55.

case management schedule along the way. ECF 45; ECF 46; ECF 55; ECF 58; ECF 61.

According to Defendants, Plaintiffs' counsel did not utilize all of the authorized discovery. ECF 145, p. 7 n.7 ("Notably, Plaintiffs used only roughly one-third of the time permitted for depositions[.]"). Such efficiency is perfectly acceptable. But, notably, there is nothing to suggest that Plaintiffs limited the scope of discovery to issues and topics that were only relevant to Count II—which was the focus of the complaint and most of the preliminary-injunction proceedings. Put differently, this isn't a case where there were specific topics of discovery pertaining to Count I that were naturally severable—the named Plaintiffs' *Gagnon* proceedings would have been discoverable and relevant to every issue in the case. The exhibits, testimony, and briefing associated with the preliminary-injunction hearing bear this out.

Perhaps more importantly, the relevant discovery here is largely within Plaintiffs' control. For example, the named Plaintiffs know when they were arrested; they know when their *Gagnon I* and *Gagnon II* hearings were held; they know whether charges in separate newly filed cases contributed to delays; and they know about their communications with their own criminal defense lawyers. Plaintiffs haven't come forward with any documents or declarations to show that there was excessive delay before the *Gagnon I* hearings; that their lawyers were unable to put on a case at the *Gagnon I* hearing; that the hearing officers did not make the requisite probable-cause findings; and that Defendants refused probationer counsel's requests for a *Gagnon II* hearing.[3] Nor do Plaintiffs explain any disputes with the exhibits in

---

[3] Plaintiffs had court watchers present at many *Gagnon I* hearings, and these court watchers confirmed that the probationers had counsel present and had the ability to present evidence. *Horton*, 2023 WL 8865872, at *13 ("As evident from the court watchers' testimony, the probationer and counsel are present at the hearing, are able to put on evidence, and then the hearing officer makes a probable-cause determination.").

this case that reflect, among other things, that Plaintiffs had their *Gagnon I* hearings within about a month (usually less) of being arrested; and that the hearing officers completed the forms establishing the existence of probable cause.  Plaintiffs' Exs. 6, 7, 8, 9, 15, and 16 (named Plaintiffs' declarations setting forth the dates of their arrests); Def. Exs. 15, 16, 17, 18, 19, and 20 (*Gagnon I* forms indicating a finding of probable cause as to each named Plaintiff).

Finally, Plaintiffs are correct in noting that the Court, in denying the motion for preliminary injunction, mentioned that the preliminary-injunction record was not fully developed on whether probationers' lawyers made strategic decisions during the *Gagnon* hearings, such as opting not to contest probable cause or to delay holding the *Gagnon II* hearing to negotiate a more favorable plea agreement.  *Horton*, 2023 WL 8865872, at *13.  But that doesn't mean that there are genuine disputes of material fact on those issues.  If there were a genuine dispute of material fact concerning those issues, the Court expected Plaintiffs to come forward with facts in response to the notice of intent to enter summary judgment.  ECF 140 (Court's Order, indicating intent to enter summary judgment) (citing *Anderson*, 621 F.3d at 280); *Forrest*, 930 F.3d at 111  ("The purpose [of giving notice] is to give the losing party the opportunity to marshal all the evidence that would be used to oppose summary judgment.").[4] Plaintiffs did not do so.

In short, discovery was more than sufficient to capture the relevant information as to Count I, and from the record before the Court and responses to the

---

[4] The Court would expect that the named Plaintiffs, through their counsel here, could have procured documents or information directly from the probationers' criminal attorneys without the need to resort to formal discovery.  "A client's ownership of the contents of his attorney's file is a matter of state law."  *In re Bounds*, 443 B.R. 729, 733 (Bankr. W.D. Tex. 2010).  In Pennsylvania, legal materials belong to the client. *Maleski by Chronister v. Corp. Life Ins. Co.*, 641 A.2d 1, 6 (Pa. Commw. Ct. 1994) (noting that attorney "[n]otes and memoranda are part of the package of goods and services" to which the client has the right), *opinion after grant of reh'g sub nom. Maleski v. Corp. Life Ins. Co.*, 646 A.2d 1 (Pa. Commw. Ct. 1994).

notice that the Court issued, there are no genuine disputes of material fact to warrant allowing this claim to proceed.

### III. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims (Counts III and IV).

The complaint alleges two companion state-law claims, and the Court will decline to exercise supplemental jurisdiction over those claims.

District courts may exercise supplemental jurisdiction over state-law claims that are related to federal claims. 28 U.S.C. § 1367. A district court may decline to exercise supplemental jurisdiction, however, if it has dismissed all federal claims or if the claim raises a "novel or complex issue of State law[.]" 28 U.S.C. § 1367(c)(1), (3). Here, because the Court is granting summary judgment on the federal constitutional claims, the Court will decline to exercise supplemental jurisdiction over the Pennsylvania constitutional claims.

Additionally, Plaintiffs contend that "no Pennsylvania court has decided what procedural or substantive due process protections the Pennsylvania constitution affords probationers at the *Gagnon I* stage, particularly in light of the prolonged incarceration they will experience until the *Gagnon II* hearing." ECF 144, p. 12. Because Plaintiffs' claims raise a novel issue of state law, that is another basis for the Court to decline to exercise supplemental jurisdiction.

## CONCLUSION

For these reasons, the Court will grant summary judgment as to Counts I and II of the complaint, and decline to exercise supplemental jurisdiction over Counts III and IV.[5]  A separate judgment order will issue.

DATED this 21st day of February, 2024.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

---

[5] The pending motions for reconsideration filed by Defendants (ECF 111, ECF 113, and ECF 114) will be denied as moot.