**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DION HORTON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>JILL RANGOS, *et al.*,<br><br>Defendants. | Case No. 22-cv-1391 |

## BRIEF IN SUPPORT OF RENEWED MOTION TO DISMISS

Pursuant to F.R.C.P. 12(b)6, Defendants Charlene Christmas, Stephen Esswein, Renawn Harris, and Robert O'Brien, file this BRIEF IN SUPPORT OF MOTION TO DISMISS.

## I. STATEMENT OF THE CASE

Plaintiffs have filed a complaint alleging the various unconstitutional practices of the probation detainer system in the Fifth Judicial District of Pennsylvania. (See ECF 1, generally).

Charlene Christmas, Stephen Esswein, Renawn Harris, and Robert O'Brien (hereinafter, these Defendants or Hearing Officer Defendants) are "managing probation officers" employed by adult probation, a subdivision of the Court of Common Pleas. ECF 1 at ¶55. These Defendants serve as Hearing Officers overseeing Gagnon I hearings. Id. Plaintiff's allege that the Hearing Officers report to the Court of Common Pleas criminal division Judges. Id.

Plaintiffs claim that alleged probation violators are subjected to untimely and constitutionally inadequate Gagnon I hearings. ECF 1 at ¶¶9, 10. Plaintiffs allege that, the

hearings are cursory in nature at devoid of constitutionally required procedural and substantive safeguards. ECF 1 at ¶13. Plaintiffs allege that a public defender is present at the hearing and that a probation officer reads the allegations against the individual. ECF 1, at ¶ 14. Plaintiffs alleges that the Hearing Officer does not consider whether prolonged incarceration is necessary. ECF 1, at ¶15. Plaintiffs additionally allege that the Hearing Officers do not have the ultimate authority over the decisions that they make during Gagnon I proceedings and that judges make the final decision on whether the individual probationer will remain detained. ECF 1, ¶16.

Plaintiffs claim that Hearing Officers rely on categorical policies adopted by Judge Rangos and Director Scherer requiring detention in some cases and categorical policies adopted by Judge Bigley and Judge Mariani requiring that all alleged probation violators be detained pending their own judicial review. ECF 1, ¶¶18, 22. Plaintiffs allege that in approximately 20% of cases, Hearing Officer Defendants recommended release of probationers after the Gagnon I hearing. ECF 1, ¶¶77, 78. Plaintiffs allege that when Hearing Officer defendants recommend that a detainer be transferred or lifted, the judicial officer scrutinizes and frequently overrides the recommendation. ECF 1, ¶82.

At Count I, Plaintiffs claim the alleged probation violation practices in Allegheny County violate their federal right to procedural due process, and seek declaratory relief against all Defendants, and injunctive relief and civil damages against Defendants other than Judge Bigley and Judge Mariani. ECF 1 at ¶154-160. At Count II, Plaintiffs claim the prolonged detention violates their federal substantive and procedural due process rights. ECF 1 at ¶ 161-167. And at Counts III and IV, Plaintiffs allege similar procedural and substantive due process violations under the Pennsylvania constitution and seek the same relief. ECF 1 at ¶ 168-181.

## II. LEGAL STANDARD

A motion to dismiss under F.R.C.P. 12(b)(6) challenges the sufficiency of the complaint and should be granted where the complaint fails to set forth the facts stating a claim to relief that is plausible on its face. Chisler v. Johnston, Civ. A. No. 09-1282, 2010 U.S. Dist. LEXIS 30349, at *12-12 (W.D. Pa. 2010) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007)). To be plausible, a pleader must do more than simply make a "bare averment that he wants relief and is entitled to it." Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008). "Labels, conclusions and a formulaic recitation of the elements of a cause of action" will not suffice. Phillips, 515 F.3d at 232.

Under Twombly, Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 127 S.Ct. at 1965. Moreover, the Phillips court cautioned "that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claims rests." Phillips at 233 (citing Twombly, 127 S.Ct. at 1965 n.3). After Twombly, "it is no longer sufficient to allege mere elements of the cause of action, instead 'a complaint must allege facts suggestive of [the proscribed] conduct." *Id.* At 344 (*quoting* Twombly, 127 S.C.t at 1969 n.8). In other words, a plaintiff must allege sufficient facts that, if accepted as true, state "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant may be liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949. However, the court need not "accept as true a legal conclusion couched as a factual allegation." *Id.* At 1950 (*quoting* Twombly 550 U.S. at 555); *see also* Fowler v. UPMC Shadyside, 578 F.3d

203, 210 (3d Cir. 2009). Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 55.

## III. ARGUMENT

Plaintiffs have filed a four count Complaint alleging procedural and substantive due process claims under both the United States Constitution and the Pennsylvania Constitution against all defendants. ECF 1. The Hearing Officer Defendants are probation officers working in the Fifth Judicial District of Pennsylvania and are being sued in their individual and official capacities. ECF 1, ¶55. Hearing Officer Defendants seek dismissal from this matter in their individual capacities.

### A. PLAINTIFFS HAVE NOT STATED A CLAIM AGAINST THE HEARING OFFICER DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES.

A defendant in a civil rights action must have personal involvement in the alleged wrongs. Liability cannot be predicated solely on the operation of "respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Id.; see also Keenan v. Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992); Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990). Personal involvement can also be shown through proof of direct discrimination by the supervisor. Andrews, 895 F.2d at 1478; Keenan, 983 F.2d at 466. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. Rode, 845 F.2d at 1207; see Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). The factual averments contained within a complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Plaintiffs here plead generally. Plaintiffs name the individual Hearing Officer

Defendants and the fact that they oversee Gagnon I proceedings. ECF 1, ¶55. The only other time Plaintiffs refer to the Hearing Officer Defendants individually is when setting forth statistics related to detention rate. ECF 1, ¶78. To state a claim against an individual defendant, the Plaintiff must allege participation or acquiesce with particularity. Rode at 1207. Plaintiffs do not allege with the necessary particularity actions or inaction on the part of the individual Hearing Officer Defendants.

Additionally, the due process claims set forth in Counts I-IV read as Monell claims alleging unlawful customs, policies or practices. ECF 1, ¶¶154-181. Individual defendants may be liable under § 1983 if it is shown that defendants are policymakers who, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).

However, Plaintiffs have not asserted Hearing officers are policymakers, and it is clear from the complaint that Hearing Officer Defendants do not possess the authority to make policy. Plaintiffs have not alleged that the Hearing Officer Defendants set the date or time of Gagnon I hearings. Plaintiffs have not alleged the individual Hearing Officers are responsible for instituting any other mandatory detention policy. Plaintiff do however allege specific policies were adopted Judge Rangos and Director Scherer and by Judge Bigley and Judge Mariani. ECF 1, ¶¶18, 22.

Plaintiffs have failed to state a claim against the Hearing Officer Defendants in their individual capacities and the Hearing Officer Defendants should be dismissed.

### B. PLAINTIFFS HAVE NOT SUFFICIENTLY STATED A CONSTITUTIONAL VIOLATION RELATED TO THEIR GAGNON I HEARINGS.

As Judge Mariani's brief in Support of Motion to Dismiss, ECF 50, astutely points out, each of the named Plaintiffs were arrested and the subject of their violation was the

new charges themselves. ECF 50, pg. 16 and Ex A-I.

If an alleged probation violator is detained on allegations that he engaged in a new crime but gets a preliminary hearing or trial in the context of the prosecution of the new crime, no hearing is required. Commonwealth v. Jordan, 634 A.2d 637 (Pa. 1993). Commonwealth ex rel. Rambeau v. Rundle, 314 A.2d 842, 848 n.3 (Pa. 1973).

While it is unclear from the pleadings that each of the Plaintiffs had a Gagnon I hearing,[1] the fact that each either had or waived a preliminary hearing on the new charges which were the substance of the violation, would invalidate the need for such a hearing.

Plaintiffs have failed to state a claim against the Hearing Officer Defendants in their individual capacities and the Hearing Officer Defendants should be dismissed.

## C. AS PLEAD, HEARING OFFICER DEFENDANTS ARE IMMUNE FROM SUIT IN THEIR INDIVIDUAL CAPACITIES.

It is well settled that officials sued in their personal capacities may assert personal immunity defenses to the claims against them. Hafer v. Melo, 502 U.S. 21 (1991).

### 1. Qualified Immunity

Qualified immunity protects government officials whether an error was made due to "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 129 S. Ct. at 815 (citing cases). Likewise, it remains "an immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985). Finally, the issue of qualified immunity should be addressed "at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534 (1991).

[1] There is no allegation that any of the Plaintiffs were outright denied such a hearing, however, if they were, the Hearing Officer Defendants are not alleged to have any authority related to the scheduling or timing of hearings that appear to be issues that the other defendants have or may address in their responsive pleadings.

Under this standard, government officials are shielded from civil liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson, 483 U.S. at 639. In Brown v. Grabowski, 922 F.2d 1097 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218, 111 S. Ct. 2827, 115 L.Ed 2d 997 (1991), the Third Circuit interpreted Anderson to require an analysis not only for the clear establishment of the right that an official is alleged to have violated, but also of the specific official actions alleged to have violated the right.

In Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002), the Third Circuit reviewed the analytical framework that courts should employ in determining whether qualified immunity is applicable to a given situation, stating:

> [A] qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? Saucier v. Katz, 121 S. Ct. at 2156. If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established. *See* Id. In other words, a court must consider 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' Id. (*citing* Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed 2 818 (1999). This inquiry, the Court noted, 'must be undertaken in light of the specific context of the case, not as a broad general proposition'.

Curley, 278 F.3d at 277.

The determination of whether a right is "clearly established" has been explained by the Supreme Court as follows:

> For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would

> understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'

Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 2515 (2002) (*internal citations omitted*). *See also* Saucier, 533 U.S. at 202 ("The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.")

Plaintiffs allege that at the outset Gagnon I proceedings, Hearing Officers (these Defendants) inform the individuals that the purpose of Probationers presence is to make a determination about their detainer and that there is a "public defender present who can speak on their behalf." ECF 1, ¶71. Plaintiff alleges a probation officer reads a report of the alleged violation. ECF 1, ¶72. Plaintiff alleges that an assigned public defender may then advocate for the detainer to be lifted. ECF 1, ¶73.

In sum, Plaintiffs allege that evidence is taken in the form of a probation officer reading a report, and Plaintiffs' are represented by counsel who is there to advocate for the probationer. These Defendants had a reasonable belief that the actions taken and recommendations made met constitutional standards. A government actor is entitled to qualified immunity if he or she "reasonably believes that his or her conduct complies with the law." Pearson v. Callahan, 555 U.S. 223, 244 (2009). Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. Taylor v. Barkes, 135 S. Ct. 2042, 2044, (2015). Even if Plaintiff's have plead a constitutional violation, then the next step is to ask whether the right was clearly established. Saucier v. Katz at 2156. In

other words, a court must consider "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.

The allegations of the Plaintiff, read in the light most favorable to the Plaintiff, it is clear that these Defendants are attempting to provide probationers with constitutionally adequate Gagnon I hearings. Therefore, the Hearing Officer Defendants are entitled to Qualified Immunity in their individual capacities.

2. Absolute Judicial Immunity

The United Stated Supreme Court has found a;

> [J]udge may not be held accountable in damages for a judicial act taken within his court's jurisdiction. Such immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Id.,* at 347. "Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed." Ibid. In Pierson v. Ray, *supra,* the Court held that absolute immunity shielded a municipal judge who was sued for damages under 42 U.S.C. § 1983 by clergymen who alleged that he had convicted them unconstitutionally for a peaceful protest against racial segregation. The Court stressed that such immunity was essential to protect the integrity of the judicial process. 386 U.S., at 554, 87 S.Ct., at 1217. And in *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), the Court once again enunciated this principle, despite any "informality with which [the judge] proceeded," and despite any *ex parte* feature of the proceeding. *Id.,* at 363, and n. 12, 98 S.Ct., at 1108, and n. 12.

Cleavinger v. Saxner, 474 U.S. 193, 199–200, (1985).

The Court has extended such immunity to other officials "who perform functions closely associated with the judicial process," including federal hearing officers and administrative law judges. Id. at 200. As plead, the hearings held by the Probation Hearing Officers find facts and make recommendations to judges. It is even alleged that Hearing Officer's make their recommendations based on policies set forth by the Court system. ECF 1, ¶18. Plaintiffs allege that the Defendants are "managing probation officers" employed by adult probation, a subdivision of the Court of Common Pleas and

that that the Hearing Officers report to the Court of Common Pleas criminal division Judges. ECF 1 at ¶55.

The Third Circuit has found that evaluators making recommendations to the Court as is alleged in this matter enjoy judicial immunity. Hughes v. Long, 242 F.3d 121, 126 (3d Cir. 2001). In Hughes, the Court found that defendants, court appointed custody evaluators were entitled to judicial immunity where they did not initiate a proceeding but gathered information for the Court and made a recommendation to aid the judge in her decision. Id. at 127. The Court found that the "functions are intimately related and essential to the judicial process because they aid and inform the court in its discretionary duties." Id. And that defendants acted as "arms of the court." Id.

Like in Hughes, the Hearing Officer Defendants do not initiate a proceeding but gather information to inform the Court and make a recommendation to aid the Court in its discretionary duties, in this case whether to lift detainers. The Hearing Officer Defendants are most certainly appear to be acting as "arms of the Court."

Hearing Officer Defendants are entitled to absolute judicial immunity and should be dismissed in their individual capacities.

3. Quasi-Judicial Immunity

Quasi-judicial officers who act in accordance with their duties or at the direction of a judicial officer are immune from suit pursuant to the doctrine of quasi-judicial immunity. Stout v. Naus, 2009 U.S. Dist. LEXIS 53063 (M.D. Pa. 2009); Kunkle v. Naugle, 660 Fed. Appx. 132 (3d Cir. 2016). This immunity is available to those individuals who perform functions closely associated with the judicial process. Marcedes v. Barrett, 453 F.2d 391 (3d Cir. 1971).

Additionally, the Third Circuit has found that probation officers and parole officers enjoy "quasi-judicial" immunity when engaged in "adjudicatory" duties. McBride v. Cahoone, 820 F. Supp. 2d 623, 637 (E.D. Pa. 2011) citing Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir.1986). Such immunity attaches when the officer (1) hears evidence; (2) makes recommendations as to whether to parole a prisoner; or (3) makes decisions as to whether to grant, revoke or deny parole. McBride, at 637–38.

Plaintiffs' complaint states that the Hearing Officers "report to the Court of Common Pleas criminal division Judges, including Judicial Defendants." ECF 1 at ¶55. The complaint goes on to refer to the honorable Judges as "their bosses." ECF 1, ¶22. It could not be made clearer in plaintiffs' complaint that the Hearing Officer defendants are acting at the direction of judicial officials. Moreover, the function that they are performing is arguably not just closely associated with the judicial process but is a part of the judicial process itself. Plaintiffs even allege that while the Hearing Officer defendants make a recommendation, it is the judicial officer themselves that take the final action related to the detainers. ECF 1, ¶16.

Whether the Hearing Officer Defendants actions are considered closely associated with the judicial process or the Hearing Officers are acting as "an arm of the Court," the Hearing Officer Defendants are entitled to immunity.

### D. PLAINTIFF'S CLAIMS ARE BARRED UNDER HECK V. HUMPHREY.

The United States Supreme Court holds that actions seeking to invalidate or calling into question a conviction or sentence are impermissible under Section 1983 unless the criminal case ended in the plaintiff's favor. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). The doctrine applies to declaratory and injunctive relief. See Edwards v. Balisok,

520 U.S. 641, 643 (1997); Hundley v. Ziegler, No. CIV.A. 07-848, 2007 WL 2345285, at *4 (W.D. Pa. 2007).

The Heck doctrine applies to claims regarding probation detainers. As the Third Circuit held on appeal from this Court, a favorable outcome in a civil rights action regarding a probationer detainer would "necessarily demonstrate the invalidity" of the plaintiff's detention. McBride v. O'Brien, 646 F. App'x 277, 278 (3d Cir. 2016).

Similarly, Plaintiffs in the instant matter seeks declaratory judgment claiming that the detainer on which Plaintiffs are being held violates federal law. ECF 1, ¶182. A favorable outcome would absolutely declare Plaintiffs' detention invalid. Plaintiffs have not plead that they have received relief in state court. Therefore, Heck is applicable in this matter and their claims are barred.

### E. PLAINTIFF'S CLAIMS ARE BARRED UNDER THE ROOKER-FELDMAN DOCTRINE.

The Rooker-Feldman doctrine derives from two opinions issued by the United States Supreme Court: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). "The Rooker-Feldman doctrine is based on the statutory foundation of 28 U.S.C. § 1257 and the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." Parkview Associates Partnership v. City of Lebanon, 225 F.3d 321, 324 (3d Cir. 2000). "Under Rooker-Feldman, federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." Van Tassel v. Hodge, 565 Fed. Appx. 135, 138 (3d Cir. 2014). The Rooker-Feldman doctrine bars a federal suit when the following four-pronged test has been satisfied:

1) the federal plaintiff lost in state court;

2) the plaintiff complains of injuries caused by the state-court judgments;

3) those judgments were rendered before the federal suit was filed; and

4) the plaintiff is inviting the district court to review and reject the state judgments. Van Tassel, 565 Fed. Appx. at 138.

In the instant matter each of the individual Plaintiffs lost before the State Court and are asking the federal court to overrule those decisions. As such, Plaintiffs claims are barred under Rooker-Feldman.

## IV. CONCLUSION

For the foregoing reasons, Charlene Christmas, Stephen Esswein, Renawn Harris, and Robert O'Brien respectfully request that this Court grant the RENEWED MOTION TO DISMISS COMPLAINT and dismiss all Counts with prejudice as to Charlene Christmas, Stephen Esswein, Renawn Harris, and Robert O'Brien in their individual capacities.

Respectfully submitted,

/s/ Dennis Biondo Jr.
Assistant County Solicitor
Pa. I.D. #307908
Dennis.biondojr@alleghenycounty.us
ALLEGHENY COUNTY LAW DEPARTMENT
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
(412) 350-1053

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within **BRIEF IN SUPPORT OF RENEWED MOTION TO DISMISS COMPLAINT** was served electronically by ECF/CM to all counsel of record.

*/s/ Dennis Biondo, Jr.*
Dennis Biondo, Jr.
Assistant County Solicitor

Dated: April 2, 2026