**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DION HORTON, *et al.*,<br><br>      Plaintiffs,<br><br>v.<br><br>JILL RANGOS, *et al.*,<br><br>      Defendants. | Case No. 22-cv-1391 |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS JILL RANGOS, ADULT PROBATION, AND
HEARING OFFICERS' (IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES)
MOTIONS FOR RECONSIDERATION**

### INTRODUCTION

This class action lawsuit challenges the probation detainer system in Allegheny County through which Defendants jail hundreds of individuals every year for months on end without lawful process. This scheme violates Plaintiffs' procedural due process rights because the "*Gagnon* I" proceedings at which detention decisions are supposedly made do not comport with the black-letter requirements of *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), and *Morrissey v. Brewer*, 408 U.S. 471 (1972). Among other constitutional deficiencies, Defendants deprive Plaintiffs of adequate notice, the opportunity to present or confront evidence, and of a neutral arbiter who will make an independent finding of probable cause, and who has final decision-making authority to preside over the proceedings. Plaintiffs' prolonged incarceration following the procedurally insufficient *Gagnon* I proceeding is unreasonable in violation of their due process rights.

Defendant Hearing Officers Charlene Christmas, Robert O'Brien, Stephen Esswein, and Renawn Harris (in their official capacity), and Defendants Administrative Judge Bruce Beemer

1

("Administrative Judge"), Director of Adult Probation Alan Pelton ("Adult Probation"), and Judge Kelly Bigley seek reconsideration of this court's denial of their motion to dismiss. ECF No. 182. Defendants point to no clear legal error or manifest injustice. Rather, they wish the court would have ruled on the immunities they claimed at the motion to dismiss stage instead of waiting for a more developed factual record. Defendants' substantive arguments on immunities are wrong, and their preference on timing fails to meet the high standard for reconsideration of a court ruling. Accordingly, this Court should deny Defendants' motion.

In addition, Defendant Hearing Officers Charlene Christmas, Robert O'Brien, Stephen Esswein, and Renawn Harris (in their individual capacities) have refiled their original motion to dismiss, which has already been denied by this Court.

## DISCUSSION

### I.   There Is No Basis for this Court to Reconsider Its Motion to Dismiss Ruling.

Defendants have submitted two separate motions and accompanying briefs. The first, ECF Nos. 180 and 181, filed by the Hearing Officer Defendants in their Individual Capacities, is a copy of the Hearing Officer Defendants' initial motion to dismiss and brief in support, with no new law or argument. That motion to dismiss was denied in the Court's Memorandum Order on April 14, 2023, ECF No. 104. There is no procedural basis for this Court to revisit a motion that has already been decided, particularly where Defendants do not even attempt to frame their filing as one for reconsideration. Nor does the governing scheduling order permit this maneuver. The Parties' joint proposed scheduling order (ECF No. 174), adopted by this Court (*see* ECF No. 177), authorized Defendants to re-file motions for reconsideration that had previously been denied as moot upon entry of summary judgment—not to revive motions to dismiss which have already been denied on the merits. Defendants' attempt to relitigate their motion to dismiss is therefore improper. To the

2

extent the Court elects to revisit these previously rejected arguments, Plaintiffs rely on their prior opposition (ECF No. 68).

The second motion and brief, ECF Nos. 182 and 184, filed by the Judicial Defendants, is a renewed request for reconsideration that remains procedurally and substantively infirm. Defendants simply do not like this Court's ruling. But "mere dissatisfaction" is not a basis for reconsideration, *Deeters v. Phelan Hallinan & Schmieg, LLP*, 3:11-CV-252, 2013 WL 6524625, at *2 (W.D. Pa. Dec. 12, 2013).

### a.  Defendants' Request Fails to Establish a Basis for Reconsideration

Defendants have not remotely demonstrated their entitlement to the extraordinary relief they seek. "[C]ourts tend to grant motions for reconsideration sparingly and only upon the grounds traditionally available under Rule 59(e)." *Deeters, LLP*, 2013 WL 6524625, at *1 (cleaned up).

Judicial Defendants' argument is two-fold. First, they fault the Court for declining to address whether any of the various immunities they invoked apply. *See* ECF No. 184 at 2-5, 7-8. Second, they restate their substantive arguments about the purported immunity of various defendants—arguments already raised in their original motion to dismiss and considered by this Court prior to its decision on April 23, 2023. ECF No. 184 at 7-8.

"The purpose of a motion for reconsideration, . . . is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Here, there is no "intervening change in the controlling law," and no "new evidence that was not available" since this Court denied Defendants' motions to dismiss in April 2023. *See id.* Thus, to prevail, Defendants need to show that there was a "need to correct a clear error of law or fact or to prevent a manifest injustice." *Id.* Defendants have not identified or explicitly raised either of these grounds. There is no clear error of law in this

3

court's decision to allow necessary factual development to occur before issuing a ruling on the immunity arguments put forth by Defendants. ECF No. 104 at 8. And there is certainly no "manifest injustice" in this ourt's ruling permitting Defendants to "re-raise" their arguments "as part of the preliminary-injunction motion, on a motion for summary judgment, or at trial." *Id.* at 9. Reconsideration is not warranted.

Construed generously, Defendants may be arguing that the Court's failure to rule on immunities constitutes a "clear error of law" because "immunity questions must be resolved 'at the earliest possible stage' of litigation." ECF No. 184 at 2-3 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). But *Hunter* does not say that a court must rule on what immunities apply at the motion to dismiss stage, as would ostensibly be required to show a clear error of law. (In fact, *Hunter* arose at summary judgment, *see id.*). Nor is such a requirement supported by the law.

Quite the contrary. Context-dependent, there may be good reason to delay ruling on immunities until a factual record has been developed. *See Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985) (explaining how factual development of a case may affect a court's ruling on an immunity defense). In that vein, the Supreme Court tacitly approved of delaying an immunity ruling until summary judgment. *See id.* at 526-27 (holding that "the court's denial of summary judgment finally and conclusively determines the defendant's claim of right not to *stand trial* on the plaintiff's allegations" such that an interlocutory appeal is justified). The Third Circuit has likewise admonished that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 Fed. App'x. 788, 791 n.3 (3d Cir. 2009). This Court's conclusion that Defendants' immunity defenses are "better addressed as part of the preliminary-injunction motion,

on a motion for summary judgment, or at trial," ECF No. 104 at 9, is exactly in line with this precedent.

Putting aside Defendants' failure to meet the standard for a motion for reconsideration, their underlying argument is not persuasive. For example, they make the bold claim that under "binding case law . . . damages are not available" against Administrative Judge Beemer and Director Pelton. ECF No. 184 at 5. Not so. As explained below, this is a question of fact that depends on the precise role these actors play in the conduct at issue in this litigation. *See also* ECF No. 67 at 7. And their related argument that allowing Plaintiffs' damages claim to proceed would be a "financial and resource drain" because they "would have to conduct discovery (including depositions) about damages for every Plaintiff – including those in the proposed class," ECF No. 184 at 5 n.3, fundamentally misunderstands how a damages class action works. *See In re Suboxone (Buprenorphine Hydrochloride and Nalaxone) Antitrust Litig.*, 421 F. Supp. 3d 12, 63 (E.D. Pa. 2019) (explaining that under Fed. R. Civ. P. 23(b)(3), plaintiffs must simply show "that a reliable method is available to prove damages on a class-wide basis"). Defendants' remaining contentions invoke a similar combination of merits arguments—already presented to the court—with arguments about how they do not want to be "subject to the cloud of litigation." ECF No. 184 at 7. But a motion for reconsideration cannot be used "as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence,* 226 F.Supp.2d 588, 606 (M.D. Pa. 2002).

Defendants' final claim that a resolution of immunities would aid in a settlement negotiation is even further outside the realm of what is properly considered on this motion: which is whether there was a clear error of law or manifest injustice in this court's prior ruling. There was not.

## II.    Defendants Are Wrong on the Merits

Beyond their failure to satisfy the standard for reconsideration, Defendants' arguments also fail on the merits. The various immunity doctrines they invoke do not bar Plaintiffs' claims.

### a.    Eleventh Amendment Immunity Does Not Shield Defendants Administrative Judge and Adult Probation from Liability.

Eleventh Amendment immunity prohibits federal courts from hearing a case against a State when "the State is the real, substantial party in interest." *Pennhurst v. Halderman*, 465 U.S. 89, 101 (1984) (citation omitted). An exception exists when the case "challeng[es] the constitutionality of a state official's action." *Id.* at 102 (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

Defendants reiterate their contention, already made in their motion to dismiss, that Eleventh Amendment immunity precludes monetary claims against Defendants Administrative Judge and Adult Probation. ECF No. 184 at 5; ECF No. 65 at 11. In doing so, Defendants confuse the applicable immunities for state officials acting as an arm of the state with the clear liability that exists for officials with final administrative policymaking authority at the county level, like Defendants Administrative Judge and Adult Probation. Plaintiffs' allegations, taken as true, establish that these Defendants acted for the County when they made policies requiring mandatory detention of Plaintiffs by Hearing Officers without regard to the individual circumstances of the alleged violation of probation.

*First*, *Monell v. Dep't of Social Services of City of New York* expressly permits Section 1983 suits against local governing bodies seeking monetary, declaratory, or injunctive relief where an unconstitutional policy statement, ordinance, regulation, or decision is officially adopted or promulgated by an official policymaker—so long as relief sought is "limited to local government units which are not considered part of the State for Eleventh Amendment purposes." 436 U.S. 658, 690 n. 54 (1978). Municipal liability under § 1983 attaches where "a deliberate choice to follow a

course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Plaintiffs allege that Defendants Administrative Judge and Adult Probation are final policymakers acting on behalf of the county when they exercise their authority to make administrative and managerial policies at the county level, such that they are liable under *Monell*.

*Second*, Courts have further clarified that it is not the status of an official—but the specific conduct or function of the official at issue—that determines whether they act on behalf of a county or the state. "[T]he key question is whether the State, rather than the municipality, controlled the official when he was performing the particular function that is alleged to have resulted in an injury under Section[]. . .1983." *Hailey v. City of Camden*, 631 F. Supp. 2d 528, 543 (D.N.J. 2009). When officials like Defendants Rangos and Adult Probation are "making and applying county-wide policy" in an administrative or managerial function, instead of "carrying out state-wide policy," they do not have immunity. *Carter v. City of Philadelphia*, 181 F.3d 339, 351 (3d Cir. 1999).

*Third*, "Eleventh Amendment immunity is an affirmative defense and the burden is thus on [Defendants Administrative Judge and Adult Probation] to establish [their] immunity from suit." *Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir. 1999). In this case, where the liability of the Defendants turns on the "actual function of a governmental official, in a particular area," Defendants have a burden to prove that their alleged conduct—approving detainer policies for Allegheny County that require mandatory detention without regard to the individual circumstances of an alleged violation of probation—does not constitute administrative or managerial acts in their capacity as final policymakers of county-level policy. Those questions may require close

7

examination, as states may not "simply label[] as a state official an official who clearly makes county policy." *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 786 (1997).

In the present case, Plaintiffs have clearly identified Defendants Administrative Judge and Adult Probation Director as officials with final policymaking authority for the County numerous times. ECF No. 1 ¶¶ 18, 24, 51, 61, 105 (describing how Defendants Rangos and Adult Probation approved an Allegheny County-specific detainer policy that governs the *Gagnon* I proceedings). Additionally, the relief sought is limited to the local government unit of Allegheny County, and thus falls within the purview of *Monell*.

To support their position, Defendants reference a string-cite of distinguishable cases made in their original motion to dismiss and reply that were already before this Court when it ruled on the motion.  ECF No. 184 at 5, n.2 (citing ECF No. 65 at 11-12; ECF No. 74 at 2-3). For instance, in *Quisenberry v. Ridge*, this Court found that the plaintiff's claims against a judge and a probation official were barred by the Eleventh Amendment because they were Commonwealth employees. 2021 WL 4340549, at *1-2 (W.D. Pa. 2021). The only claims brought by the plaintiff in *Quisenberry* were official capacity claims for retrospective relief. *Id.* at *1. Notably, this Court found that Mr. Quisenberry failed to state a *Monell* claim as he did not "identify County policy makers that implemented or carried out the illegal policy at issue." *Id.* at *2. Conversely, here, Plaintiffs have pled sufficient facts to demonstrate that in promulgating the probation detainer policy, Defendants Administrative Judge and Adult Probation were acting as policymakers for Allegheny County. As discussed above, that they may generally be considered Commonwealth employees is not dispositive in the Eleventh Amendment analysis—state employees can also serve as municipal policymakers as relates to certain job functions. *See Carter v. City of Philadelphia*, 181 F.3d 339, 351 (3d Cir. 1999) (explaining that because "making and applying county-wide

policy differs from carrying out state-wide policy," federal courts differentiate based on the functions, "generally finding the former to be local and the latter to be state"). This primarily includes their administrative or managerial functions, such as promulgating an administrative policy. *See, e.g.*, *Fogle v. Sokol*, 2:17CV194, 2018 WL 6831137, at *14-15 (W.D. Pa. Dec. 28, 2018) (applying the functional analysis to hold that prosecutor acted as final policymaker for the county in adopting a policy geared toward generating evidence in a manner that allegedly violated the plaintiff's due process rights). Promulgating the detainer policy is an administrative task that falls squarely within this definition.  Because Plaintiffs allege that Defendants are acting as final policymakers for the County when they undertake the specific administrative and managerial function of approving detainer policies, the cases cited by Defendants are inapt, and Defendants do not have Eleventh Amendment immunity for their actions.

  **b.  Courts Can Grant Declaratory Relief Against Defendants Sued in Their Individual Capacities.**

  Defendants contend that the *Ex parte Young* exception to Eleventh Amendment immunity cannot be used to seek declaratory relief against a state official in her individual capacity, and that the individual capacity claims against Judge Bigley and the hearing officers are therefore barred. In support, they cite a series of unpublished cases, none of which actually stands for that proposition. Some, in fact, suggest the exact opposite. For example, in *Moyer v. Aramark*, No. 18-CV-02267, 2019 WL 1098951, at *5 (E.D. Pa. Mar. 7, 2019), the court held that claims against the defendants in their *official* capacity were barred by the Eleventh Amendment. *See also Szerensci v. Shimshock*, No. CV 20-1296, 2021 WL 4480172, at *4 (W.D. Pa. Sept. 30, 2021) ("Because suit against the Court Defendants in their official capacity is barred by the Eleventh Amendment, the Court next considers whether Plaintiffs have properly pled claims against the Court Defendants in their individual capacities. . . .").

In any event, Defendants' premise is incorrect. Whether *Ex parte Young* permits a claim to proceed does not turn on the capacity in which the defendant is sued. *See Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 178 (3rd Cir. 2002) (rejecting argument that the Eleventh Amendment only permits suits against officials in their individual capacities and emphasizing that the relevant inquiry is whether plaintiffs seek prospective relief against state officials for violations of federal law). As the Supreme Court has explained, courts applying *Ex parte Young* need only conduct a "straightforward inquiry" into "whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 637 (2002).[1] That inquiry is easily satisfied here: the complaint alleges ongoing violations of Plaintiffs' due process rights and seeks prospective relief in the form of a declaration and injunction against the hearing officer and judicial defendants. *See* ECF No. 1 ¶¶ 54, 55 (naming Judge Bigley and the Hearing Officer Defendants and specifying that they are sued in their "individual and official capacities for declaratory relief").

Defendants also argue that the Court should now decide whether Plaintiffs may seek prospective relief against the judicial defendants in their individual capacities because defendants remain parties even if they change roles—for example, noting that Judge Bigley is currently assigned to Orphans' Court. See ECF No. 184 at 7. Initially, this is not a reason for the court to reconsider its ruling on the immunity defense. Defendants do not raise or argue any facts that

---

[1] The Supreme Court's own phrasing of the *Ex parte Young* doctrine has not been entirely consistent. *Compare, e.g., Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997) (stating the doctrine covers "certain suits seeking declaratory and injunctive relief against state officers in their individual capacities"), *with Reed v. Goertz*, 598 U.S. 230, 234 (2023) (stating the doctrine allows suits "for declaratory and injunctive relief against state officers in their official capacities"). But whatever the variation in terminology, the governing standard has remained consistent: courts must conduct the "straightforward inquiry" articulated in *Verizon Maryland Inc.*—namely, whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. 535 U.S. at 637.

establish that Judge Bigley is any closer to a stand-in for the state of Pennsylvania in her current Orphans' Court position than in her prior role. More substantively, Defendants have presented no evidence that Judge Bigley has relinquished authority over or supervision of individuals for whom she entered sentences of probation when she did sit on the criminal bench. From a cursory review of future *Gagnon* hearings scheduled in Allegheny County, Plaintiffs' counsel were able to locate ten active dockets with pending *Gagnon* proceedings for which Judge Bigley remains listed as the assigned judge.[2] Judge Bigley's authority over ongoing probation proceedings was clear at the time that Plaintiffs filed their complaint. Defendants have, at best, raised an unresolved factual question as to the extent of her continued involvement. If Defendants wish to prove new facts and establish new defenses, that is the purpose of discovery in ongoing litigation – not reconsideration of their prior motion to dismiss,

### c. Judicial Immunity Does Not Shield Judge Bigley.

Judicial immunity does not bar prospective relief, which is all Plaintiffs seek here against Defendant Bigley. *Pulliam v. Allen*, 466 U.S. 522, 536-43 (1984). Although the Federal Courts Improvements Act, passed in response to *Pulliam*, sometimes bars suits for *injunctive* relief against judicial officers for judicial acts, it explicitly allows suits—like this one—for *declaratory* relief against judicial officers for judicial acts. 42 U.S.C. § 1983 ("[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."). Plaintiffs agree that Defendant Bigley cannot be enjoined for her judicial acts, and for this reason, Plaintiffs seek only a declaratory judgment.

---

[2] Docket numbers CP-02-CR-0000315-2024, CP-02-CR-0000456-2024, CP-02-CR-0002194-2025, CP-02-CR-0006184-2022, CP-02-CR-0006840-2023, CP-02-CR-0007333-2023, CP-02-CR-0008080-2021, CP-02-CR-0007492-2024, CP-02-CR-0007620-2024, CP-02-CR-0008195-2024.

## CONCLUSION

Each of Defendants' arguments fails on its merits. The Court should deny their motion.

Dated: April 16, 2026

s/ Katherine Hubbard
Katherine Hubbard (D.C. 1500503)*
katherine@civilrightscorps.org
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Phone: (202) 894-6132

Dolly Prabhu (PA 328999)
dprabhu@alcenter.org
Jaclyn Kurin (D.C. 1600719)*
jkurin@alcenter.org
Bret Grote (PA 317273)
bretgrote@abolitionistlawcenter.org
ABOLITIONIST LAW CENTER
PO Box 8654
Pittsburgh, PA 15221
412-654-9070

* Appearing *pro hac vice* in accordance with
Local Rule LCvR 83.2(B)

12